### TUTTLE v. CLAFLIN et al.

(Circuit Court of Appeals, Second Circuit. February 23, 1897.)

PATENTS—INFRINGEMENT—DAMAGES—DECISION ON APPEAL—REHEARING.

Decree on appeal in case for infringement of plaiting machine, reversing decree for nominal damages, and allowing substantial damages, will not be modified by directing return of the case to the master for further evidence in regard to the cost of hand-made plaits, on the single affidavit of defendant's representative, made as the result of a short test by persons employed by him, that such plaits could be made at a certain low cost; the same person having represented defendant before the master, when cost was an important feature of the case, and then been silent on the subject, and the manufacture of plaits having practically ceased, so that evidence on the subject of cost would necessarily be based on estimates.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a suit in equity by Theodore A. Tuttle, trustee, etc., against John Claflin, as executor of Horace B. Claflin, and others, formerly partners, under the name of H. B. Claflin & Co., for alleged infringement of a patent for a machine for crimping textile materials. The patent was sustained, and held to be infringed, by the court below, and an accounting was ordered. 19 Fed. 599. The cause was afterwards heard on exceptions to the master's report, and a decree entered for complainant for nominal damages. 62 Fed. 453. Both parties appealed to this court, which, on July 29, 1896, filed an opinion, finding that large profits had been made by H. B. Claflin & Co., and reversing the decree below, with directions to enter a decree for complainant in the sum of $40,000 and costs. See 22 C. C. A. 138, 76 Fed. 227. Defendants have now applied for a modification of the decree by directing the return of the cause to the master for further proofs.

Benj. F. Lee, for plaintiff.

Edmund Wetmore, for defendants.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The defendants have moved that the decision upon this appeal be modified by directing that the case should be returned to the master for further evidence in regard to the cost of hand-made plaits, upon the ground that it has been ascertained by experiments that the cost of linen plaits, made and ironed by hand, of as marketable a quality as those made upon a machine, would not have exceeded one cent per yard. The counsel for the defendants states that this class of testimony was not deemed by him of importance upon the hearing before the master, because the complainant's testimony was to the effect that hand-made plaits could not in any event compete with machine-made plaitings, on account of the inferiority of hand-made work. We think that the counsel construed the testimony too literally. The witnesses were introduced for the purpose of proving the cost of hand-made linen and woolen plaitings, and their testimony related to the salable or merchantable character of the goods as they ordinarily could be presented by hand, and that linen and percale goods could not commercially compete with machine-made goods without an excessive expense. They went further than this, and said that hand-made goods of linen could not be manufactured at any cost to compete in quality with the same kind of plaitings made by machinery; while one of these witnesses also said that he could not make narrow plaits in woolen goods so as to give satisfaction. This latter class of testimony was not true, as was shown by the defendants' witness Mrs. Smith; and, indeed, it must have been well known that silk and woolen goods were, as a rule, hand plaited, in preference to running them through a machine.

The defendants were represented, upon the hearing before the master, by Mr. Asahel K. Smith, the superintendent of their manufacturing department, who asked his wife, under whose supervision the defendants' plaiting was made from the latter part of 1876 to the first part of 1880, to make experiments upon the subject of the cost of hand-made goods. Her experience made her an intelligent witness in regard to plaitings, and she made an experiment, but of so brief a character as to be of very little moment. The attempt of Mr. Smith to present information to the master upon the subject of profits stopped with this testimony. Mrs. Smith, however, also testified that the goods that were plaited upon the machines could be plaited by hand; that she did not know the actual expense of plaiting fine goods by hand, because no separate account was made of it; that silk and dress goods and woolen goods were generally hand plaited at the complainant's factory during 1876 and subsequently, because the work upon fine goods was done better by hand than through a machine; that the character of the material made the difference between the results of hand plaiting and of machine plaiting; and that hand-made plaiting was sufficiently uniform for the ornamental uses to which the articles were put.

The questions of expense and of the proper standard of comparison for the purpose of an estimate of profits went to the master upon the testimony which the parties thus chose to give. The actual history of the manufacture fully justified the finding that, in esti-

mating the profits gained by the use of the patented machines, the proper and the only proper standard of comparison was the expense of making the like articles by hand. In determining the amount of profits, his estimates were based upon the only figures which the parties chose to give him. The defendants now say, by Mr. A. K. Smith, the same person who was silent before the master, that:

"With the apparatus that we had in our employ during the time covered by the accounting, it would have been entirely possible to have made by hand all of the plaitings which we made by machine, and to supply our trade without any delay. At the rate of wages we then paid, and carefully following the work step by step, I am able to say positively that the cost of the hand plaiting, and ironing each plait out so as to produce the result shown by the specimens above referred to, would not have exceeded one cent a yard. A more accurate estimate would show about three-quarters of a cent, but it is certain that it would not have exceeded one cent a yard; and at that cost we could have furnished plaitings upon all the goods which we made and sold during the said period."

We do not doubt that the exhibits were made in the presence of Mr. Wetmore, in the time that he states, and as they are now presented; but the question is that of the cost of manufacture upon a commercial scale. The new information which Mr. Smith has obtained is not in harmony with his silence when he was also the representative of his employers, and when cost was an important feature of the case. His single affidavit, made as the result of a short test by the work people whom he employed, that linen plaitings can be made at one cent per yard, is not adequate to satisfy a court that justice towards a losing party requires a rehearing.

Turning to the question whether, under any state of facts, it would be the more proper course to send back the case to the master, in the hope that another investigation might turn estimates into mathematical accuracy, it is to be recollected that this case is, by reason of its history, both remarkable and unique. The interlocutory decree was dated in March, 1884, and the master's report was dated August 24, 1893, and related to an industry which, as an active industry, died in 1879 or 1880. As the case presented itself before the master, large profits had been undeniably made. This court thought that too little account had been taken of two subjects which would reduce the sums found by the master, but that, if the case should be sent back, the result would be another prolonged hearing, necessarily based upon estimates by the experts on both sides; for the time when facts could be ascertained which were based upon the experience of actual manufacturers had been suffered to pass by. No new rule of law was announced in regard to the burden of proof, or in regard to the necessity that the complainant should, in the cases which ordinarily come before the master, satisfy him by affirmative evidence of the amount of profits. The court was of opinion that justice to the defendants required a reduction of the amount which had been apparently made out by the testimony, and that for the purpose of bringing to a close a litigation which, by its delays, had become discreditable, it was desirable that the court should take the responsibility of making a decision, modifying the amount found by the master to such an extent that the defendants should have no cause of complaint. The motion is denied.