TUTTLE v. CLAFLIN.

In re LEE et al.

(Circuit Court of Appeals, Second Circuit.  June 24, 1898.)

No. 119.

1. APPEAL—RECORD—MOTION TO STRIKE OUT.
   Where several different proceedings are pending below, arising in the same original suit, and an appeal is taken from a decree rendered in one of them. matters embodied in the record which relate only to the other proceedings will be stricken out on motion.

2. SAME—PARTIES.
   An appeal cannot be dismissed on the ground that the appellants are not parties, where, though they are not parties to the record in technical form, they were made parties by an order of the court below, so as to be entitled to appeal from the decree.

3. SAME—APPEALABLE FINAL DECREE.
   A decree entered in a proceeding by attorneys to enforce a lien for their fees, which adjudges that they are entitled to compensation to a definite amount and have a lien therefor on a fund in court, and directs payment thereof, is a final appealable decree, although the residue of the fund may not have been finally disposed of.

4. ATTORNEY AND CLIENT—LIEN FOR COMPENSATION—AUTHORITY TO RETAIN.
   Where an assignee for benefit of creditors, who was engaged in prosecuting a suit for infringement of a patent belonging to the estate, contracted with a third person, who was suing the same party for infringement on another patent, to unite their interests for their mutual benefit, and authorized such third person to carry on or settle the litigation at his own expense, and divide the net amount recovered equally between them, held, that the latter had authority to employ a solicitor and counsel, who should be entitled to a lien for their fees on the fund recovered by their efforts. 86 Fed. 964, affirmed.

5. ATTORNEYS AND CLIENT—CONTRACT FOR COMPENSATION.
   After entry of a decree in a trial court for merely nominal damages, counsel for complainant entered into a contract with him whereby counsel agreed to prosecute an appeal, and use all reasonable efforts to secure a reversal, complainant agreeing to pay all necessary disbursements, and to give counsel 20 per cent. of the gross amount of any recovery which should be paid, after deducting the expenses and disbursements. A reversal of the decree was thereafter obtained with directions for a substantial recovery, and thereupon the opposite party moved the court for a modification of the proposed mandate, which motion was successfully opposed by complainant's counsel. Application was then made to the supreme court for a writ of certiorari, which motion was also successfully opposed by plaintiff's counsel. Held, that the contract for compensation covered, not merely the services rendered in procuring the reversal, but also the subsequent services rendered in both courts.

Appeal from the Circuit Court of the United States for the Southern District of New York.

After the final decree had been entered in the cause of Tuttle, Trustee, against Claflin, for the payment of $43,557.27 to the complainant, and before April 16, 1897, the Union Trust Company of New Haven, Conn., and other creditors of the estate of the Elm City Company, brought a bill in equity in the circuit court for the Southern district of New York to restrain George H. Wooster, who, under three contracts with Tuttle, trustee, was authorized to collect the judgment, and Mr. Milliken, his solicitor, from collecting it, upon the ground that these contracts were void; and praying, among other things, that the fund, when collected, should be transmitted to the probate court in New Haven, and, in the alternative, that a master should be appointed by the circuit court to ascertain the amount of the sums, which should be immediately payable to Wooster, Milliken, and Lee & Lee, who were made defendants. A motion for a temporary injunction restraining Wooster and Milliken from collecting the judgment was made returnable on April 16, 1897, at which time the circuit court preferred that the judgment should be paid into court, and deposited in the designated depository, than that it should remain unpaid during the pendency of this new litigation, and ordered that the defendants place in the depository of the court, on or before April 19, 1897, the amount of the judgment, which was done, and it was satisfied of record. The motion for preliminary injunction was withdrawn. On June 14, 1887, Benjamin F. Lee and W. H. L. Lee, partners as Lee & Lee, brought their petition in the matter of this fund, averring the facts in regard to their employment in the original suit; their services in the various proceedings and hearings before the circuit court, the master, the circuit court of appeals, and the supreme court; that they have a lien upon the deposited fund for the payment of their reasonable fees, which the complainant in the original suit was unable to pay; and averring the existence of the Union Trust Company litigation, the progress of which had become uncertain by the interposition of demurrers, and praying for an order directing payment of their fees, and a reference to a master to ascertain the amount which was due. In the Union Trust Co. Case an amended bill was filed on April 26, 1897, and additional parties were made. Upon an order upon the parties in Tuttle against Claflin and the parties in the Union Trust Company suit to show cause, an order was made, on September 1, 1897, referring to a master to report in regard to the compensation of Lee & Lee, and W. T. B. Milliken, the solicitor for the complainant in the Claflin Case. The report was made, exceptions were filed and were overruled, the report was confirmed by the circuit court (86 Fed. 972), and an order, dated April 6, 1898, was made directing a payment from said fund of $11,434.90 to Lee & Lee, and $3,500 to W. T. B. Milliken, with interest from February 11, 1898, the date of the master's report. The Union Trust Company and others, known as the opposing creditors, appealed from this order.

Edmund Wetmore and John K. Beach, for appellants.

W. H. L. Lee and H. T. Kingsbury, for Lee & Lee.

W. T. B. Milliken, pro se.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Two preliminary motions by the appellees are to be disposed of prior to a consideration of the merits of the appeal. Since the entry of final judgment in the Claflin suit, there have been three independent proceedings at the foot of the decree: (1) The present proceedings at the suit of Lee & Lee. (2) A proceeding upon the petition of George H. Wooster for the repayment of his disbursements in the litigation. (3) A motion to substitute Charles H. Trowbridge, as trustee of the Elm City Company, in the place of Tuttle, as complainant in the Claflin suit. This motion was denied.

There are in the transcript of record, from printed pages 174 to 178, inclusive, copies of a stipulation and of two orders of court, and the opinion of the court relative to the second and third proceedings only. The present motion is to strike from the record that part of it which is included in these pages, because they relate to different proceedings from the one in which this appeal is taken. The position of the appellees is well founded, the papers are not properly a part of the transcript of record, and the motion is granted, except as to the order upon the application of George H. Wooster.

The second motion is to dismiss the appeal because the order was not appealable, and because the appellants are not parties to this cause or proceeding. The history of the application of the appellees, which has been heretofore given, shows that, while they are not parties in technical form, they were in fact made parties by the order of the circuit court, and are properly appellants. That the order of the circuit court of April 6, 1898, was a final decree from which an appeal could be taken, was decided in Trustees v. Greenough, 105 U. S. 527. The order, like those in that case, was "a final determination of the particular matter arising upon the complainant's petition for allowance." The motion is denied.

It appears from the master's report that the patent in the Claflin Case was owned by the Elm City Company, an insolvent corporation, which made, in 1876, an assignment of its assets to Tuttle, as trustee for its creditors. The suit was commenced on August 1, 1878. In June, 1883, Tuttle, as trustee, and George H. Wooster, who was the owner of patents known as the "Pipo Patents," and upon which he had also a suit against H. B. Claflin & Co., agreed that each would push, at his own expense, the suits to a final determination, and divide the gross proceeds equally. In 1888 another agreement between the same parties was made, by which Tuttle, as trustee, made Wooster his attorney to prosecute the suits, with full power to settle and compromise them and to employ counsel. In the same year another agreement was made, by which Wooster agreed to hold Tuttle, as trustee, harmless from all costs and expenses arising out of said suits, but Wooster was to be reimbursed out of the gross proceeds, and before the division thereof, his expenses and those which he might become liable to pay. The poverty of the Elm City Company's estate induced Tuttle to make these agreements. In 1890, Wooster retained B. F. Lee, Esq., and he had also retained W. T. B. Milliken, Esq. Mr. Lee was the active patent lawyer in the case. Wooster paid the expenses incidental to the suit, amounting, as he says, to $5,438.31. Tuttle paid nothing and took no part in the litigation, except to tell Milliken that he had no funds and no collectible assets, and that Milliken must look for his compensation alone to the funds which might be recovered.

The appellants insist that the contracts made by Tuttle as trustee were improvident and ultra vires, and that the entire fund should be sent to the probate court at New Haven, which has charge of the settlement of the estate of the Elm City Company, and which should make the proper allowances, if any, for services. Inasmuch as Wooster was fully clothed with the apparent power to employ counsel,

as the trustee took no part in the litigation, paid and proposed to pay nothing, and relieved the estate from all liability in case of non-success, and as the fund was obtained by the disbursements of Wooster and the services of those whom he employed, they have an equitable lien upon it, and the circuit court, which properly has control of the fund, should adjust the amount of the liens for these services before transmitting it to another jurisdiction. Trustees v. Greenough, 105 U. S. 527; Railroad Co. v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387.

The master made a careful report, which considered the value of the services of Messrs. Lee & Lee, based upon a quantum meruit, and found that they were reasonably worth the sum of $13,000, from which should be deducted $1,850, a sum already paid by Wooster, leaving a balance due of $11,150, to which should be added $284.90 for disbursements which they made. The contest before the master was between Lee & Lee and the opposing creditors, so called. After the payment of $1,850 had been made, and after a decree in the Claflin Case for six cents damages and such an apportionment of costs that a balance would be in favor of the defendants, and after an appeal had been taken, B. F. Lee and Wooster entered into an agreement, dated December 29, 1894. The important part of the agreement, after a recital of the condition of the suit, is as follows: Lee agreed to act as counsel for Wooster in the prosecution of said appeal, and to use all reasonable and proper efforts to secure a reversal of said final decree. Wooster agreed to pay all disbursements connected with said suit and with said appeal that had already been made or incurred, or that might thereafter be incurred, other than fees of solicitor and of counsel, and agreed that Lee should receive 20 per cent. of the gross amount of any recovery which should be paid in said suit, after deducting from said total recovery and payment all expenses and disbursements of litigating said suit theretofore, or which might thereafter be expended or incurred, apart from such 20 per cent.

The value of the whole services, estimated upon a quantum meruit, would probably exceed the 20 per cent. mentioned in this contract. The proper construction of the contract is therefore an important question. Was it confined in point of time to the date of the opinion of the first appellate court, or did it include all services before that court, and exclude any possible services before the supreme court? After the decision of the court of appeals, the defendants made a motion to modify the proposed order for a mandate so that the case should be sent back to the master for further evidence. This motion was based upon affidavits which were intended to show that a different state of facts could be proved before the master. Another motion was made upon the ground that Tuttle, as trustee, had no title to the patent in suit. After the denial of these motions, the defendants applied to the supreme court for a writ of certiorari, which was opposed by a brief and an oral statement, and was denied, so that a large amount of work was performed after the opinion of the court of appeals was filed.

We think that this contract should not be construed as limited in point of time to that date, or to a mandate which might forthwith

follow the opinion, but it included whatever contests and arguments should take place in the appellate court. It was to be expected that some motion would be made by the defendant in case of non-success, and the contract looked to a compensation based upon a permanent reversal of the decree of the circuit court, for the new agreement would have been an inadequate benefit to Wooster if a new compensation upon the basis of a quantum meruit was to commence after a successful argument in the court of appeals. We think that the contract meant to include services necessary to render a reversal valuable and remunerative, and to cover those rendered in opposing a writ of certiorari. Mr. Lee entered into a contract for services for a compensation based upon the successful attempt to reverse the decree, which meant to keep it reversed, so as to secure a fund out of which he could be paid, and a defense against the application for a writ of certiorari is one of the not unusual incidents to success in the first appellate court. The compensation to Lee & Lee must, therefore, be governed by the contract, and should be estimated as follows: The amount of interest paid by the depositary, being at the rate of $1\frac{1}{2}$ per cent. per annum, is to be added to the amount of the judgment, from which should be deducted Wooster's claim of $5,438.31, and Lee & Lee's disbursements of $284.90, and the amount of 20 per cent. upon the balance, plus $284.90, with interest from February 11, 1898, the date of the master's report, upon the amount of the fund not heretofore paid to Lee & Lee, should be ordered paid by the clerk of the court to them. If a payment has been made from the fund to Lee & Lee under the order of April 6, 1898, such amount will be regarded as part payment of the sum named in the decree. We do not include Milliken's solicitor's fees in the disbursements to be deducted from the judgment, because the contract provided that these fees were not to be paid by Wooster, and the expenses which were to be thereafter deducted were those which he had paid or was thereafter to pay.

In regard to Mr. Milliken's fees of $3,500, there was no testimony before the master which characterized this sum as an unreasonable amount. The master has found it to be reasonable, and, without testimony or further knowledge upon the subject, we cannot pronounce it excessive. The order in regard to his fees is affirmed.

The order in regard to the amount to be paid Lee & Lee is modified as hereinbefore specified, and the cause is remitted to the circuit court, with directions to enter a modified decree in accordance with the directions contained in this opinion. The appellants and the appellees will each pay their own costs in this court. The appellants will pay one-half the cost of printing the record, and Lee & Lee and Milliken will each pay one-quarter of said cost.