WOOSTER v. TROWBRIDGE.

LEWIS v. SAME.

(Circuit Court of Appeals, Second Circuit. January 15, 1903.)

Nos. 113, 114.

1. INSOLVENCY—CONTRACT MADE BY TRUSTEE—VALIDITY.

A trustee for an insolvent corporation, who had instituted a suit for infringement of a patent, made an agreement with complainant by which the latter, who had a related suit, agreed to prosecute both at his own expense, and to divide the recovery with the trustee. The suit of the trustee was difficult and doubtful, and no substantial recovery was probable, but through the energy of complainant, and after nearly 20 years of expensive litigation, a substantial sum was recovered. *Held*, that the contract of the trustee, under the circumstances, was not improvident nor ultra vires, and that a court of equity would not refuse to enforce the same by giving complainant his share of the recovery, which but for his services would not have been received by the estate.

2. PATENTS—CONTRACT FOR DIVISION OF DAMAGES RECOVERED FOR INFRINGEMENT—CONSTRUCTION.

A contract between owners of related patents, who were laymen, by which they agreed to issue licenses together, that the second party should endeavor to induce all infringers to take licenses, and should retain a per cent. of all license fees recovered for the other party, and "of all other sums payable for damages for infringement," should not be so narrowly or technically construed as to exclude from its operation sums recovered for infringements, although awarded as "profits," and not as damages, the evident intention being that it should apply to all sums so recovered.

3. SAME.

Such contract, however, did not entitle the second party to a share of the sum recovered for infringement in a suit previously instituted by the

first party, and in relation to which the second party performed no service.

**4. ASSIGNMENT—RECOVERY IN PENDING SUIT—EVIDENCE TO ESTABLISH.**

Evidence considered, and *held* insufficient to sustain a claim to a fund recovered for infringement 'of a patent, based upon an alleged verbal assignment of the patent and the recovery, while the suit was pending, to a solicitor for the complainant therein.

Appeals from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decree of the Circuit Court of the United States for the Southern District of New York, entered June 13, 1902. The decree provides that a fund of $24,063, paid into the registry of the court April 19, 1897, be divided (after paying costs) equally between Emma C. Wooster and Charles H. Trowbridge, as trustee. The decree disallowed claims presented by A. Nelson Lewis, Ida Tillinghast and Emma C. Wooster. All parties appeal. Trowbridge alleges error in awarding to Emma C. Wooster one-half of the fund and insists that the entire amount belongs to him as trustee. Emma C. Wooster insists that the court erred in not sustaining her claim to an additional one-quarter of the fund. A. Nelson Lewis in his own right, and as assignee of Ida Tillinghast, alleges error in the disallowance of his claim. The decision of the Circuit Court is reported in 115 Fed. 722.

John A. Garver, for Emma C. Wooster.
Edmund Wetmore and John K. Beach, for Charles H. Trowbridge.
Henry Galbraith Ward and A. Nelson Lewis, for A. Nelson Lewis.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

COXE, Circuit Judge. The facts are fully and accurately stated in the opinion of the judge of the Circuit Court, and, as we concur in his disposition of the cause and, generally, in the conclusions reached by him, an extended discussion of the issues involved will not be necessary.

The fund, which is the subject of this controversy, was recovered in an infringement suit between Theodore A. Tuttle, as trustee of the Elm City Company, of New Haven, Conn., and Horace B. Claflin et al., commenced August 1, 1878, in the Circuit Court for the Southern District of New York. After nearly 20 years of litigation the defendants paid into court the sum of $43,557. Claims amounting to $19,493 were subsequently allowed and paid, leaving a balance of $24,063 to be divided in the pending action and cross-action.

The claim of Mrs. Wooster, which was allowed by the Circuit Court, is based upon a tripartite agreement, executed June 16, 1883, by her husband and assignor, George A. Wooster, Tuttle, as trustee, and Charles B. Stoughton, Tuttle's solicitor in the infringement suit against Claflin & Co., and two other agreements made in February, 1888, explaining, modifying and ratifying the same. Briefly stated these agreements provided that Wooster would at his own expense prosecute the Claflin suit to a final determination and divide the recovery with Tuttle. If they were valid the Circuit Court was correct in awarding one-half of the fund to Mrs. Wooster.

In order to interpret the agreements properly it is necessary that they should be considered only in the light of the facts existing at their inception. The claim against Claflin & Co. was, in 1883, only a chose in action. The suit had not been pressed for five years and it was not

until the following year, 1884, that an interlocutory decree was entered. (C. C.) 19 Fed. 599.

The claims of the Crosby and Kellogg patent were designed to cover a sewing machine attachment, incapable, without the aid of subsequent improvements, of producing the finished product of the machines used by Claflin & Co. No one in 1883 could have predicted any substantial recovery. Certainly no one at that time dreamed of a recovery of $40,000. The court making the award aptly characterized the suit as "both remarkable and unique." 22 C. C. A. 138, 76 Fed. 227; 27 C. C. A. 255, 82 Fed. 744. In 1883 the claim, if not desperate, was surely difficult and doubtful. It was one which could only be collected after years of arduous endeavor and by the expenditure of large sums of money. The situation was one which required the exercise of prudence and caution and especially so by one who was managing an insolvent estate for the benefit of creditors. There was nothing illegal, improvident or ultra vires in the contract of June 13th, as modified and explained by the subsequent contracts. They were prudent contracts for the trustee to make and we agree with the Circuit Court in the reasons given for upholding them. Indeed, the same proposition, by implication at least, was decided by this court when the question of allowing fees to the counsel employed by Wooster was before it for decision. 31 C. C. A. 419, 88 Fed. 124.

Wooster was the managing man in the litigation; new energy was instilled into it by his efforts; he employed counsel, procured witnesses and paid disbursements amounting to several thousand dollars. In short, it may be said, that but for his efforts nothing would have been realized for the creditors of the New Haven Company. To turn his representative out of court, upon the theory that the agreements which created the fund were illegal and beyond the power of the trustee to make, would be without precedent in a court of equity.

The claim of Mrs. Wooster to recover an additional one-fourth of the fund under the contract of September 7, 1877, was properly disallowed. This was an agreement between Tuttle, as trustee, and Alexander E. Kursheedt. It recited the ownership by the Elm City Company of the Crosby and Kellogg patent, the control of the Arnold patent by Kursheedt and the desire of both parties to unite their interests in the two patents and grant licenses thereunder. The parties agree that Tuttle will issue licenses, as he may be requested to do so by C. B. Stoughton, and deliver them to Kursheedt, who is to do all in his power to induce all persons infringing the Crosby and Kellogg patent to take licenses thereunder. The agreement then proceeds:

"In consideration of the premises, party of the first part (Tuttle) agrees that the license fees under said Crosby and Kellogg patent, and all other sums payable for damages for infringement thereof be made payable to the party of the second part (Kursheedt) as attorney, and said party of the second part shall retain for himself twenty-five (25) per cent. of all moneys so received, and shall immediately after the receipt of said moneys pay the balance, seventy-five (75) per cent. thereof, to said Stoughton, said Stoughton to retain twenty-five hundred dollars to meet any expense of litigation or other disbursements connected with enforcing the patent that party of the second part and said Stoughton may deem necessary."

The agreement was assigned to Mr. Wooster in February, 1890, and was by him assigned to Mrs. Wooster, and under it she claims 25 per cent. of the fund in court, which, she insists, is an award of "damages for infringement" of the Crosby and Kellogg patent.

The judge of the Circuit Court was of the opinion that, as the agreement gave Kursheedt an interest only in the damages payable for infringement of the patent, he acquired no right to participate in a recovery which was for profits, and not for damages. We are unable to concur in this construction. The parties to this agreement were laymen, probably unfamiliar with the subtle distinctions of the patent law. They were dealing with facts not theories; what they had in mind was the money collected from infringers and it is not to be presumed that in using the word "damages" to describe the money so collected they intended to recognize a fine-spun distinction between damages and profits. There is nothing in the record to warrant such an interpretation. On the contrary the agreement itself and all the surrounding facts and circumstances indicate that the word "damages" was used in the broad, popular sense as descriptive of the sums collected by Kursheedt for past infringements. We prefer to put the affirmance of the decision, in this regard, upon the ground suggested by the judge of the Circuit Court, as follows:

"I am unable to escape the conclusion that the true intendment of this contract was merely to obtain damages from past infringers, whenever such damages could be collected without resort to law, and possibly to induce, or aid in inducing, infringers to accept licenses for unexpired terms of the patent."

In the brief filed by the counsel for Mrs. Wooster he says correctly:

"The object of the Kursheedt contract was to compel infringers to pay for their previous infringement of the patent and to take out licenses for the future."

Kursheedt was made the attorney for the owner of the patent to make settlements and grant licenses and for his services he was to retain 25 per cent. of the amount received by him. In other words, he was to be paid for the work done. In order to guard against any possible miscarriage in this regard it was explicitly provided, for the protection of Kursheedt, that all sums for license fees or for past infringements should be payable to him. It was from the "moneys so received" that he was authorized to deduct his commission. It was as if Tuttle had agreed to make Kursheedt his attorney and had agreed to pay him one-quarter of the amount collected.

We are convinced that the parties never had in contemplation an agreement which permitted Kursheedt to recover one-quarter of a judgment entered 20 years after the date of the agreement in a suit which he did not institute or promote. The services of Kursheedt were enlisted because of his familiarity with the business and his personal interest in having the Crosby and Kellogg patent recognized. He agrees "to do all in his power to induce persons infringing to take a license and procure therefor the best terms and conditions that he can." It was in consideration of these services that he was authorized to retain 25 per cent. of the moneys received by him. It was never intended that Kursheedt should share in a fund which was due

entirely to the energy and persistency of others. It is not necessary to decide whether a trustee can make a contract giving a valuable interest in a fund to a person who did not create or help to create it, for the reason that we are convinced that this is not such a contract. It does not, under any reasonable construction, relate to the fund in controversy.

The Lewis claim remains to be considered. He asserts title through C. B. Stoughton, a man whose character for integrity, at the time in controversy, is conceded to be questionable. The contention of the claimant is that on or about November 2, 1878, and after the suit was commenced against Claflin & Co., Tuttle made an oral assignment of the entire prospective recovery to Stoughton in settlement of a bill for $5,000 for services which he had rendered for the Elm City Company or its trustee. The evidence relied upon to establish the claim is carefully stated and discussed in the opinion of the judge of the Circuit Court and but little need be added. Tuttle testified to the alleged oral assignment. But Tuttle has made so many contradictory statements during the course of the litigation that he is admitted on all sides to be utterly unreliable as a witness. His testimony, therefore, except as it is corroborated, need not be considered.

It is contended that corroboration is found in an entry probably made by Tuttle in a book, kept by his bookkeeper, containing a schedule of the patents belonging to the Elm City Company. Opposite the Crosby and Kellogg patent are the words, "Sold C. B. Stoughton for counsel fees." The entry is without date and Tuttle had no definite recollection regarding it, but even if it were a contemporaneous entry it is wholly insufficient to transfer to Stoughton the claim against Claflin & Co. for past infringement, especially when an action had already been commenced to recover such claim. Kaolatype Co. v. Hoke (C. C.) 30 Fed. 444.

The conduct of Stoughton certainly does not strengthen the claimant's case, for when he was endeavoring to obtain money from Lewis he produced a forged assignment from Tuttle as evidence of his title. If Tuttle had actually assigned the patent and the claim against Claflin & Co. to him he had only to send the written assignment to Tuttle for execution and it would have been returned duly signed. It is incredible to suppose that an intelligent man would take the desperate chance of forgery to raise money when he could have obtained the genuine signature by simply asking for it.

It is thought that a claim based upon an oral assignment from Tuttle to Stoughton, which assignment cannot be established without resort to the testimony of Tuttle, who has repeatedly denied that he made it, is too doubtful to be sustained. We are also of the opinion that the claimant cannot in the present condition of the pleadings and proofs recover upon the theory of a quantum meruit.

The decree of the Circuit Court is affirmed, without costs.