EVERETT, CLARKE & BENEDICT v. ALPHA PORTLAND CEMENT CO.

In re ALPHA PORTLAND CEMENT CO.

(Circuit Court of Appeals, Second Circuit.   July 22, 1915.)

No. 228.

1. ATTORNEY AND CLIENT ⬤⟳171—ATTORNEY'S LIEN—ORIGIN.

An attorney's general or retaining lien upon the papers of his client has its origin in the inherent power of courts over the relations of attorney and client, and has been long recognized and protected.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ⬤⟳171.]

2. ATTORNEY AND CLIENT ⬤⟳171—ATTORNEY'S LIEN—NEW YORK LAW.

The retaining lien of an attorney upon his client's papers in his possession to secure his charges is recognized in New York.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ⬤⟳171.]

3. ATTORNEY AND CLIENT ⬤⟳171—ATTORNEY'S LIEN—PAPERS AND JUDGMENT.

The retaining lien of an attorney upon the papers of his client in his possession to secure his charge, and his lien on a judgment recovered by him, are different in their nature, and rules applicable to the one are not necessarily applicable to the other; the lien on a judgment not being recognized at common law unless declared by statute, while that on papers is, since the common law only recognizes liens when acquired by possession.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ⬤⟳171.]

4. ATTORNEY AND CLIENT ⬤⟳171—ATTORNEY'S LIEN—LIEN ON JUDGMENT—EQUITY.

Apart from statute, courts of equity recognized an attorney's lien on the judgment secured by him, as courts of common law did not, since possession is not essential to an equitable lien.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ⬤⟳171.]

5. ATTORNEY AND CLIENT ⬤⟳181—ATTORNEY'S LIEN—LIEN ON JUDGMENT—EXTENT.

An attorney's special or charging lien on a judgment recovered by him for his client never exceeds costs and fees due him in the particular suit.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 394–398; Dec. Dig. ⬤⟳181.]

6. ATTORNEY AND CLIENT ⬤⟳181—ATTORNEY'S LIEN—LIEN ON PAPERS—EXTENT.

An attorney's general or retaining lien on his client's papers in his possession is not limited to services rendered in the particular suit in which the papers were received, but includes any general balance due for services.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 394–398; Dec. Dig. ⬤⟳181.]

7. ATTORNEY AND CLIENT ⬤⟳171—ATTORNEY'S LIEN—LIEN ON JUDGMENT—ENFORCEMENT.

An attorney may actively enforce his special lien on a judgment recovered by him.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ⬤⟳171.]

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. ATTORNEY AND CLIENT ☞171—ATTORNEY'S LIEN—LIEN ON PAPERS—ENFORCEMENT.

An attorney's general lien on his client's papers in his possession is merely passive and retaining, and may not be actively enforced.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 383; Dec. Dig. ☞171.]

9. ATTORNEY AND CLIENT ☞182—ATTORNEY'S LIEN—LIEN ON PAPERS.

A company obtained insurance against loss in personal injury actions by its employés, the insured agreeing to place in the control of the insurer any action brought against it, and empowering the insurer to designate attorneys to appear on the insured's behalf in such actions without interference from it. Upon injury to an employé of the insured, who sued, the defense was taken over by the insurer, which placed its attorneys in charge thereof, and later, during the pendency of the action, the insurer was dissolved by a state court, and its affairs taken over by the state insurance commissioner. The insurer's attorneys agreed with the insured that they should continue to defend the pending suit, but at the expense of the insurance commissioner, upon the insured's desiring to substitute its own personal attorney for those of the insurer. *Held*, that such attorneys could not assert a lien upon the insured's papers relating to the suit in their possession for disbursements and services, since the attorneys' client was the insurance company, not the insured.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. ☞182.]

10. ATTORNEY AND CLIENT ☞182—ATTORNEY'S LIEN—LIEN ON PAPERS—POWER OF COURT.

A court has power to order an attorney to deliver up a client's papers, upon the client's giving security in a sum sufficient to answer the attorney's demands.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 315, 399–406; Dec. Dig. ☞182.]

11. ATTORNEY AND CLIENT ☞75—CLIENT'S RIGHT TO CHANGE ATTORNEY.

A client has a right to change his attorney at any stage of a suit, and without assigning a reason; and the court may grant an order of substitution, imposing upon the client such terms as the circumstances justify to protect a discarded attorney, who appears free from blame.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 110–119; Dec. Dig. ☞75.]

12. ATTORNEY AND CLIENT ☞75—CLIENT'S PAPERS—POWER OF COURT TO ORDER SURRENDER.

Where a client, pending suit, seeks an order substituting a new attorney of record, the power of the court to order the discarded attorney to surrender the client's papers, upon security being given to cover his legitimate charges, rests upon the relationship of client and attorney, and the mere fact of possession of the client's papers by the attorney does not gives the court jurisdiction to make such an order.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 110–119; Dec. Dig. ☞75.]

13. ATTORNEY AND CLIENT ☞63—RELATIONSHIP—ESTABLISHMENT—LIEN.

Where attorneys were originally retained by an indemnity company, and on its behalf undertook the defense in a personal injury suit against an employer, but upon dissolution of such indemnity company by a state court they agreed with the defendant employer to continue to conduct the defense, although at the expense of the state insurance commissioner, the relationship of attorney and client was established between them and the defendant; but, as they had no lien on defendant's papers up to

that time, none was thereafter created, as the expenses were to be borne by the insurance commissioner.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 85, 87; Dec. Dig. ☞63.]

In Error to the District Court of the United States for the Southern District of New York.

This cause comes here on writ of error to review an order of the District Court of the United States for the Southern District of New York.

Everett, Clarke & Benedict, of New York City (Herman S. Hertwig and George M. Clarke, both of New York City, of counsel), for plaintiffs in error.

Louis H. Porter, of New York City (Louis H. Porter and F. Carroll Taylor, both of New York City, of counsel), for defendant in error.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge. The question presented to the court in this case involves the validity of an order allowing the substitution of attorneys and the turning over of papers upon which the attorneys claim a lien; the substitution of the attorneys and the surrender of the papers being conditioned on the giving of security for the payment of any final judgment which the displaced attorneys might obtain against the defendant in an independent action.

The Employers' Indemnity Company of Philadelphia, in 1912, insured the defendant for a period named in the contract on account of accidents to defendant's employés; the liability on account of an accident to any one person being limited to $5,000. The defendant was entitled to recover this amount only after it had paid out the amount in money, after trial of issue, in satisfaction of the final judgment against it. In consideration of this insurance the defendant paid the premium and agreed to place in the control of the Employers' Indemnity Company any action brought against it for the injuries covered by the policy, and empowered the Indemnity Company to designate attorneys to appear on behalf of the defendant in such actions without interference from the defendant. The Indemnity Company undertook to defend such actions at its own cost in the name and on behalf of the assured. While this policy was in effect the action in which the order complained of was made, Corsi v. Alpha Portland Cement Company, was commenced, and pursuant to the terms of the policy the defense of the action was intrusted to the Indemnity Company, and the latter retained the plaintiffs to appear and defend on behalf of the defendant. The same course was pursued in the case of certain other actions brought by various other injured employés against the defendant.

After certain of the actions had been concluded, but while the Corsi action was still pending, the Indemnity Company was dissolved by order of the Pennsylvania courts in May, 1914, and its affairs were placed in the hands of the Pennsylvania state superintendent of insurance for liquidation. Upon receipt of this notice the defendant re-

quested the plaintiffs to consent to the substitution of Mr. Louis H. Porter as its attorney in the Corsi action and the delivery to him of the papers, pleadings, and exhibits in their possession relating to the defense of the action. Plaintiffs agreed. to consent to this upon receiving payment of their claim for services and disbursements in the action, amounting to $130.50, and to surrender the papers, pleadings, and exhibits on satisfaction of their alleged lien thereon for the unpaid balance of their claim for services rendered and disbursements made in the various ·matters in which they had represented the defendant, amounting to $1,092.26. The conditions named by the plaintiffs were rejected by the defendant, on the ground that plaintiffs under the circumstances had no lien or claim enforceable against the defendant. A motion was thereupon made by·the defendant to determine the question. The District Court held that:

"Whether or not defendant is indebted to Messrs. Everett, Clarke & Benedict for professional services in connection with this and other litigations, and, if so, in what amount, are questions which will have to be settled in an 'independent action."

Accordingly the order under review was made, substituting. Mr. Porter as attorney for the defendant, and directing plaintiffs to deliver to him the papers, pleadings, and exhibits, on condition that the de-' fendant first file an undertaking to secure the payment of the amount claimed by plaintiffs in the event that either or both of their contentions should be established either in independent proceedings or on appeal from the order.

The defendant claims that no liability to the plaintiffs on their part exists; that all the services performed by the plaintiffs were rendered solely in the interest of the Employers' Indemnity Company, and not for the defendant, whose interests from the beginning of the litigation were represented by Mr. Louis H. Porter as their personal ·counsel. In support of this view of the matter attention is called to a letter written by. the plaintiffs to the defendant on May 19, 1914, in which they announced the dissolution of the Employers' Indemnity Company by the action of the Pennsylvania court, and that the insurance commissioner of Pennsylvania had taken charge with powers of ·a receiver, to liquidate the business and protect the creditors. The letter continued:

"In respect to all unsettled claims, which arose prior to the reinsurance ·date, the assured, being liable in the first instance, must see to the protection of their own interests·by continuing the litigation, compromising, appealing, etc., as they may consider most expedient. In this connection, we, who have heretofore represented the Employers' Indemnity Company, have been authorized by the commissioner to confer with the assured and offer such aid as may be advisable to protect the rights of all creditors and to reduce the ultimate liability of the company. Our charges for this service will be paid by the commissioner. We shall be pleased to confer with you as to pending cases."

To that Mr. Porter replied on behalf of defendant as follows:

"I have consulted with my clients with regard to the case of Corsi against the Alpha Portland ·Cement Company and they accept my recommendation that you continue in charge of this case as heretofore, my understanding being that your charges will be borne by the insurance department of Pennsyl-

rania. and that I will co-operate with you in the defense of the case as in the other cases that we have heretofore had."

Thereupon plaintiffs replied as follows:

"I acknowledge the receipt of your letter of May 27th, referring to the above case. and stating that your clients have accepted your recommendation that we shall continue in charge of the case as heretofore, it being understood that our charges are to be borne by the insurance department of Pennsylvania, and that you will co-operate in the defense of the case as heretofore. This is entirely satisfactory."

This correspondence makes plain what the original understanding of the parties was, and that the plaintiffs' fees and disbursements were to be paid by the Indemnity Company. Moreover, the policy issued to the defendant by the Indemnity Company expressly stated that the latter would be "liable for the costs of court and of the company's attorneys and agents in defending or effecting the settlement of any suit or claim covered by this policy." The plaintiffs were employed by the Employers' Indemnity Company, and they had full knowledge of the provision referred to, which was inserted in all the policies issued by the company.

The plaintiffs nevertheless assert that they have a lien on the papers, pleadings, and exhibits in the action for the general balance due to them for services and disbursements "in matters in which they represented the Alpha Portland Cement Company" and that they are entitled to have that lien satisfied before being compelled to surrender the papers. In the argument in this court they admitted that they have no personal claim upon defendant for their fees and disbursements, and that the only personal liability which existed was against the Indemnity Company. They contended merely that the personal liability of the Indemnity Company for unpaid fees and disbursements is secured by their attorney's lien on the papers in their possession and that the defendant, as well as the Indemnity Company, is bound to respect that lien, and to satisfy it before it can lawfully require the surrender of the papers. The argument is that, when the defendant empowered the Indemnity Company to retain attorneys to appear in these actions and to defend them, it is to be assumed that they knew that the law gave to attorneys so designated a lien on the papers to secure payment of their fees and disbursements; that therefore its agreement that the Indemnity Company might designate the attorneys necessarily carried with it an understanding that it thereby assented to the legal consequences of such designation, namely, the accrual of a lien which in an emergency, would be enforceable against it; that defendant is in precisely the position of A., who permits B. to pledge A's property with C. to secure the personal claim of C. against B.

[1] An attorney's general or retaining lien is a common-law lien, which has its origin in the inherent power of courts over the relations between attorneys and their clients. The power which the courts have summarily to enforce the performance by the attorney of his duties toward his client enables the court to protect the rights of the attorney as against the client. This lien is one which the courts have long recognized and protected. Almost 200 years ago, in a case before

Lord Chancellor Talbot, Ex parte Bush, 7 Viner's Abr. 74 (1734), it was held that:

"The attorney hath a lien upon the papers in the same manner against assignees as against the bankrupt, and though it does not arise by any express contract or agreement, yet it is as effectual, being an implied contract by law."

And in a case before Lord Mansfield in 1779, Wilkins v. Carmichael, 1 Doug. 101, 104, counsel, who was seeking to establish a lien in favor of a captain against a ship for his wages, likened it to the case of attorneys, who could not be compelled to deliver up a client's papers until their charges were paid, and was stopped by Lord Mansfield, who said:

"The practice, in that respect, was not very ancient, but that it was established on general principles of justice, and that courts both of law and equity have now carried it so far that an attorney or solicitor may obtain an order to stop his client from receiving money recovered in a suit in which he had been employed for him, till the bill is paid."

And in a recent case, In re Morris, 1 K. B. 473 (1907), Lord Chief Justice Alverstone said:

"Prima facie a solicitor has a lien for his charges upon the papers of his client."

[2] In McPherson v. Cox, 96 U. S. 404, 417, 24 L. Ed. 746 (1877), the Supreme Court, in a case which came up from the District of Columbia, declared that an attorney has a lien by law, apart from any express agreement, on the papers of his client in his hands, for all that is due him as an attorney. And the courts of the local jurisdiction also recognize the attorney's retaining lien. Matter of Dunn, 205 N. Y. 398, 98 N. E. 914, Ann. Cas. 1913E, 536 (1912).

The courts have held that the fact that an attorney is not retained by the nominal party whom he represents, but by the real party in interest, acting under the authority of the nominal party, does not deprive the attorney of his charging lien on the judgment, even though the real party is alone under personal obligation to remunerate him. In McGregor v. Comstock, 28 N. Y. 237 (1863), the New York Court of Appeals held that an attorney who obtained a judgment had a lien upon it for his costs, and that his lien was not defeated by the fact that he was retained by the real party in interest, and not by the nominal defendant. In that case the judgment debtors had paid the judgment to the nominal defendant. It was held that the payment by the plaintiffs was in fraud of the rights of the attorney. The court said:

"The fact that the defendant's attorney was not retained by the defendant in the suit, but by the real party in interest, cannot defeat the lien of the attorney upon the judgment. The acquiescence of the nominal defendant in the conduct of the suit by the attorney, for the benefit of the party in interest, would preclude him from insisting that the lien did not exist, and the opposite party in the action has no right to question it."

In Hilton Bridge Co. v. N. Y. C. & H. R. R. R. Co., 84 Hun, 225, 32 N. Y. Supp. 514 (1895), the New York Central Railroad employed the Moffett, Hodgkins & Clarke Company to procure a right of way

for the railroad, the consideration for these services being fixed by agreement. In this work the Moffett Company employed attorneys to procure a clear title. The attorneys did so, but retained the muniments of title in their hands by virtue of their lien. The General Term held that this lien was good, not only against the Moffett, Hodgkins & Clarke Company, which had employed the attorneys, but also against the railroad company. This case was reversed in the Court of Appeals in 145 N. Y. 390, 40 N. E. 86, but on the ground that the lawyers, because of their lien, were not necessary parties to the particular suit. The Court of Appeals said, however:

'They [the lawyers] have procured the right of way to a very large extent, and have in their possession contracts, title deeds, and other papers relating to the business, upon which they claim, and, so far as appears from the record, they have a lien for their professional services."

This court, in a case heard by Judges Wallace and Shipman, Tuttle v. Claflin, 88 Fed. 122, 31 C. C. A. 419 (1898), held that an attorney had a right to enforce his lien on funds recovered under the following circumstances: An assignee for the benefit of creditors, who was engaged in prosecuting a suit for infringement of a patent belonging to the estate, contracted with a third person, who was suing the same party for infringement on another patent, to unite their interests for their mutual benefit, and authorized such third party to carry on or settle a litigation at his own expense, and divide the net amount recovered equally between them, and the latter employed the solicitor and counsel who was asserting the lien. The party who made this agreement with the third party did not employ the counsel, took no part in the litigation, paid and proposed to pay nothing, and yet the court recognized the attorney as having against him an equitable lien on the fund recovered.

[3-8] But it by no means follows that because an attorney has, as against a nominal party who did not retain him, a special or charging lien on a judgment, he therefore must also have as against such a party a special or retaining lien on the papers in the suit. The two liens are different in their nature, and the rules applicable to the one are not necessarily applicable to the other. An attorney's lien on a judgment is not recognized at common law unless declared by statute, but the lien on the papers is. The reason for that distinction is that the common law only recognized liens acquired by possession. Courts of equity, however, recognized the lien on the judgment; possession not being essential to an equitable lien. Again, a special or charging lien on a judgment never extends beyond the costs and fees due the attorney in the suit in which the judgment is recovered, while a general or retaining lien on the papers is not limited to the services rendered in the particular matter in which the papers were received, but includes a general balance due him for services rendered in other suits. And again, an attorney may take active steps to enforce his lien on a judgment, but the lien on the papers is a mere passive lien, without any right to actively enforce it. It is a mere right to retain.

[9] The general lien which an attorney has upon his client's papers is commensurate with the client's right and title to them. The

plaintiff's client was the Indemnity Company, and their lien on the papers is commensurate with the right of the Indemnity Company to the papers. This is the principle laid down in Jones on Liens, § 146, and we think it sound. It has been held in England that if a client takes to his attorney, for his opinion, title deeds which the client has received from another person for inspection pending negotiations for a sale of property or other business transaction, the attorney cannot, upon a claim of lien, retain the papers as against the person to whom they belong. Hollis v. Claridge, 4 Taunt. 807 (1813). In answer to the suggestion that the attorney had a lien on the papers until he was paid, Gibbs, J., replied, "But it is Basson who alone is bound to pay him." Basson was the one who took the deeds to the attorney. In that case Gibbs, J., said:

"Suppose one having a diamond offers it for sale to another for £100, and gives it to him to examine, and he takes it to a jeweler, who weighs and values it. He refuses to purchase, and, being asked for it again, he says the jeweler must first be paid for the valuation. As between the jeweler and purchaser, the jeweler must first be paid for the valuation; as between the jeweler and purchaser, the jeweler has a lien; but, as against the lender, he has no right to retain the jewel."

Chambre, J., in announcing that he was of the same opinion, declared that it would be "extremely mischievous if it were otherwise."

In the case at bar the papers were intrusted by defendant to the Indemnity Company, to be used by it in defending an action in the result of which it was interested. The Indemnity Company had no right to use the papers for any other purpose, or to pledge them to secure a debt due from it alone, and in respect to which the defendant was not in any way concerned. If the Indemnity Company failed to defend the suit, or the papers were not needed in the defense of the suit, and the defendant had need of them to defend the suit, or to use in some other suit, there can be no question but that it could recover the possession of them as against the Indemnity Company. The defendant's rights are not less as against the plaintiffs, whose rights are only commensurate with those of its client. No retaining lien on the papers can therefore be asserted as against the defendant.

[10, 11] That a court has power to order an attorney to deliver up a client's papers upon the client's giving security in a sum sufficient to answer the attorney's demands is too well established to be called in question. Neither can it be questioned that a client has a right to change his attorney at any stage in the proceeding and without assigning a reason, and may make application to the court to have a new attorney of record substituted, and the court may grant an order of substitution imposing such terms as may be justified under the circumstances to protect the rights of the attorney if he be free from blame. The Supreme Court of the United States in Re Paschal, 10 Wall. 483, 19 L. Ed. 992 (1870) held that a party has a general right to change his attorney, and that a rule for that purpose would be granted, leaving to the attorney the advantage of any lien he might have on papers or moneys in his hands as security for his fees and disbursements. And such, too, is the doctrine of the local jurisdiction. The New York Court of Appeals in the Matter of Dunn, supra,

recognizes the doctrine that the courts will not enforce a substitution of attorneys, where the first attorney is without fault, unless the amount due the attorney for his services and expenditures is either paid or secured.

Lord Romilly, who no doubt, as Master of the Rolls, was very conversant with the practice in such matters, declared in Re Bevan, 33 Beavan, 439 (1864):

"The course I adopt in all these cases is this: Where a sum is claimed by a solicitor to be due him, and some delay occurs in the taxation, imputable to the fault of no one, I order the papers to be delivered over on the amount being secured, and on an undertaking to produce them as required in the course of the taxation."

And in Re Galland, L. R. 31 Ch. Div. 303 (1885), Chitty, J., after citing Lord Romilly's statement, declared:

"It seems to me that it has been treated by the profession as the rule of the court."

And in the same case Lindley, J., referring to the right of the court to order a solicitor to deliver up papers on payment into court of sufficient to secure him, said:

"There is evidently jurisdiction to do it in some cases."

[12] But the power of the court to order in a summary proceeding the surrender of the papers upon security being given rests upon the relationship of attorney and client. The fact that these papers are in the hands of attorneys does not in itself give the court jurisdiction summarily to make the order. Moreover, the order assumes the relationship in that it provides that there may be a substitution of attorneys. See In the Matter of Niagara, Lockport & Ontario Power Co., 203 N. Y. 493, 97 N. E. 33, 38 L. R. A. (N. S.) 207, Ann. Cas. 1913B, 234 (1911).

[13] While these plaintiffs were originally retained by the Indemnity Company, their letter of May 19, 1914, suggesting that they continue to act in the case, and the acceptance of their offer in the letter of Mr. Porter of May 27th, established the relationship. But if they had no lien on the papers prior to that time, they obtained none thereafter, because of the express agreement that their subsequent services were to be paid by the insurance commissioner of Pennsylvania.

The order made by the court below assumed that the lien which these plaintiffs claimed was based on an indebtedness due from the defendant, and it declared that whether such indebtedness existed, and, if so, what amount, should be settled in an independent action, and that the security should be for payment of any final judgment which might be obtained by the plaintiffs. It appears, however, in this court, that the plaintiffs disclaim the existence of any indebtedness whatever to them from the defendant, and the lien they assert is simply a retaining lien, resting on an indebtedness due from the Indemnity Company and upon the relation of that company with the defendant. As the facts disclosed in this record show that no such lien on the papers as the plaintiffs claim can exist against the defendant, even if it might subsequently be shown that an indebtedness for professional

services exists as against the Indemnity Company, we think the order should be modified, and that the substitution of attorneys should be granted, and the plaintiffs directed to turn over the papers as prayed, and· that no security be required. to be given.

It is so ordered.