MARÍA R. MARTÍNEZ, peticionaria, *v.* LA CORTE DE DISTRITO DE SAN JUAN, HON. DOMINGO SEPÚLVEDA, JUEZ, demandado.

No. 543.—*Visto:* Diciembre 6, 1926. *Resuelto:* Enero 17, 1927.

1. ABOGADO Y CLIENTE—COMPENSACIÓN Y ''LIEN'' DEL ABOGADO—HONORARIOS U OTRA REMUNERACIÓN—TERMINACIÓN DE LAS RELACIONES—TERMINACIÓN ESTANDO EL PLEITO EN TRÁMITE—COMPENSACIÓN DEL ABOGADO AL TERMINARSE LAS RELACIONES.—A menos que un abogado demuestre o bien que un pleito ha de continuarse o que ha de crearse un fondo o que existe una conspiración para privarle de sus honorarios o cualquiera otra excepción fijada por la ley, el cliente puede terminar sus relaciones con aquél sin pagarle compensación alguna en el pleito en el cual desea terminar las relaciones y las cortes no pueden proteger las relaciones pecuniarias entre uno y otro.

2. ABOGADO Y CLIENTE—COMPENSACIÓN Y ''LIEN'' DEL ABOGADO—HONORARIOS U OTRA REMUNERACIÓN—TERMINACIÓN DE LAS RELACIONES—TERMINACIÓN ESTANDO EL PLEITO EN TRÁMITE—COMPENSACIÓN DEL ABOGADO AL TERMINARSE LAS RELACIONES.—Cuando un cliente desea terminar sus relaciones con su abogado y éste alega una supuesta conspiración para privarle de sus derechos, el peso de la prueba recae sobre éste para demostrar tal conspiración claramente.

CERTIORARI para revisar ORDEN de *Domingo Sepúlveda,* J. (San Juan), en cuanto al extremo que imponía como condición previa para el desistimiento de la acción el pago de los honorarios de abogado. *Revocada* en cuanto al extremo indicado.

*Lucien Longchamps,* abogado de la peticionaria; *Juan B. Soto,* a nombre del interventor Méndez Vaz, quien también compareció en persona.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tribunal.

María R. Martínez radicó una demanda contra Juan Suárez Pérez, por seducción bajo promesa de matrimonio.

El pleito fué entablado por conducto del abogado Luis Méndez Vaz. Aparece que, posteriormente, María R. Martínez trató de desistir del pleito y fuera de la corte dió instrucciones a su abogado Luis Méndez Vaz para que desistiera del mismo. Como él no lo hizo así, ella preparó una moción a ese efecto para presentarla a la corte, y utilizó otro abogado con el único fin de desistir de la acción, y, como también aparece, no para la continuación del mismo. Cuando se notificó la moción de desistimiento y el nombramiento de un nuevo abogado al Sr. Luis Méndez Vaz, éste compareció ante la corte y manifestó que la demandante le había dado en forma irrevocable la representación del caso, habiéndose obligado a no dar paso alguno, judicial o extrajudicial, sin su intervención; que la demandante en ningún tiempo había revocado la autoridad que le había dado a su abogado de récord en el caso, ni le había pagado sus honorarios, y que lo que ella estaba tratando de hacer era privarle de sus derechos, conspirando a este efecto con el demandado, y que por ese motivo solicitaba de la corte que suspendiera toda actuación hasta que se discutiera la moción.

A excepción de ciertas manifestaciones sin jurar, y que tampoco se probaron, hechas por el mencionado abogado de récord Sr. Luis Méndez Vaz, no constaba nada en los autos por declaración jurada o en alguna otra forma tendente a demostrar una conspiración entre la demandante y el demandado en el pleito original. La corte inferior estaba obligada a suponer que el deseo de desistir del caso por parte de la demandante era genuino.

Se discutió la moción de la demandante, y la corte la declaró con lugar, expresándose en los siguientes términos:

"La Corte ordena y decreta que el abogado Luis Méndez Vaz cese como abogado de la demandante María R. Martínez en el presente pleito, pero al mismo tiempo ordena y decreta que esta orden no entrará en vigor hasta tanto que la demandante María R. Martínez haya pagado a su abogado Luis Méndez Vaz los honorarios correspondientes por sus trabajos en el referido pleito."

Entonces María R. Martínez solicitó y obtuvo un *certiorari* de esta corte.

[1] Puede verse de la decisión en el caso *In Re Paschal*, 10 Wall. 483, que en épocas anteriores era dudoso si una corte podía en cualquier tiempo controlar las relaciones pecuniarias entre abogado y cliente, pero se le permitía al abogado presentar una acción contra su cliente en cobro de honorarios. La Corte Suprema de los Estados Unidos en dicho caso adoptó un criterio avanzado en favor de la protección de los abogados, y exigió que el estado de Tejas que era una de las partes en el litigio tomara medidas para proteger pecuniariamente a los abogados antes de que pudiera substituírseles.

La Corte Suprema de los Estados Unidos, así como otras cortes más, protegen los derechos de un abogado a obtener compensación de su cliente en el mismo pleito, siempre que existan determinadas contingencias. Una de éstas es la continuación del mismo pleito y el deseo del cliente de substituir su abogado por otro. *The Flush*, 277 Fed. 25, 28; *The Johnson Lighterage Co.*, 240 Fed. 446 y citas; *Kellogg v. Winchell*, 273 Fed. 745, 16 A.L.R. 1159; *Everett, etc.*, v. *Alpha Cement Co.*, 225 Fed. 939; y otros casos citados por el demandado. Otra circunstancia es cuando existe determinado fondo o se crea un *res* mediante el cual el abogado, por contrato o en alguna otra forma, ha adquirido algún interés. *Barnes* v. *Alexander*, 232 U. S. 121; *Ingersoll* v. *Coram*, 211 U. S. 368, el cual cita *Walker* v. *Brown*, 165 U. S. 654 y otros casos citados por el abogado demandado. Y otra contingencia adicional es la colusión o conspiración entre el demandante y el demandado en el pleito original, para privar al abogado de su debida compensación.

Si el abogado no cae dentro de una excepción, no hay duda de que el cliente puede terminar sus relaciones con él sin pagarle compensación alguna en el pleito original en el cual se desea terminar las relaciones. *Platt v. Jerome*, 19

Haw. 384; *Martin* v. *Camp,* 219 N. Y. 170, 114 N. E. 46, L.R.A. 1917–F, 402 y nota; *Ritz* v. *Carpenter,* 43 S. D. 236, 178 N. W. 877, 19 A.L.R. 840, en que la corte citó del caso de *Martin* v. *Camp, supra,* como sigue:

"El prescindir un cliente de los servicios de su abogado no constituye un quebrantamiento del contrato, porque es condición del mismo, la que se deduce implícitamente de la relación peculiar que éste crea, que el cliente puede terminarlo en cualquier tiempo, tenga o no causa para ello." 2 R. C. L. 957.

Hayamos o no cubierto todas las excepciones, el hecho cierto es que no hemos encontrado ningún caso en que un cliente esté obligado a respetar las pretensiones de su abogado cuando el único deseo del cliente es dar por terminada su acción. *Interest reipublicae ut finis sit litium.*

[2] Siendo la regla más o menos la que hemos indicado, el peso de la prueba recae sobre el abogado que alega que ha habido conspiración. No habiéndose probado esto, la regla invocada por María R. Martínez debe prevalecer. No queremos que se entienda que resolvemos que aún si hubiera habido un arreglo entre las partes en el presente caso en virtud del cual María R. Martínez derivaba algún beneficio, el caso hubiera caído dentro de una de las excepciones. Un convenio de esta naturaleza no sería necesariamente una conspiración. Abundando en este terreno, estemos o no equivocados al decir esto, un abogado que alega una supuesta conspiración para defraudarle sus derechos debe demostrarlo así claramente.

Por tanto, aquella parte de la orden del día 1 de noviembre de 1926 que pone como condición previa al desistimiento el pago de los honorarios de abogado *debe ser anulada y darse por desistido el pleito.*

El Juez Asociado Señor Hutchison no intervino.