**WINDOW GLASS MACH. CO. et al. v. NEW BETHLEHEM WINDOW GLASS CO.**

(Circuit Court of Appeals, Third Circuit. April 13, 1920.)

No. 2521.

Corporations ☞620—Solvent corporation not restrained from maintaining proceedings for dissolution at suit, of one claiming damages for patent infringements.

A federal court *held* within its discretion in refusing to grant an injunction restraining defendant, a solvent corporation, from selling its property in good faith under direction of a state court in proceedings for its dissolution in accordance with the laws of the state; the injunction being asked by complainant in an infringement suit, which had proceeded only so far as the granting of a preliminary injunction.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Western District of Pennsylvania; W. H. Seward Thomson, Judge.

Suit in equity by the Window Glass Machine Company and the American Window Glass Company against the New Bethlehem Window Glass Company. From an order refusing the injunction, complainants appeal. Affirmed.

Clarence P. Byrnes, Samuel McClay, and George H. Parmelee, all of Pittsburgh, Pa., for appellants.

H. M. Rimer and Maffett & Rimer, all of Clarion, Pa., and Patterson, Crawford, Miller & Arensberg, of Pittsburgh, Pa., for appellee.

Before BUFFINGTON, WOOLLEY, and HAIGHT, Circuit Judges.

PER CURIAM. This appeal brings here for review the refusal of the court below to grant an injunction. Such refusal followed the filing of an opinion, which sets forth at length the facts and questions involved, and we avoid needless repetition by a reference thereto as printed in the margin.[1]

[1] "In this motion for an injunction to restrain the defendant from the sale of its real estate and plant, and thus dissipate and impair its assets, we have from the pleadings and evidence the following situation:

"The defendant corporation, after manufacturing window glass by machinery for a period of about five years, concluded by corporate action to discontinue business, wind up its affairs, and proceed in the court of common pleas of the state for a decree of dissolution and a distribution of its assets to its creditors and stockholders. In consummation of this purpose, its real estate and plant was appraised by a certified accountant at $13,500. An offer being made to purchase the property for $17,500, by resolution of the board, the offer was accepted, subject to the approval of the stockholders, which approval was had at the annual meeting held shortly thereafter. Before the consummation of the sale and the actual filing of the petition for dissolution, plaintiffs move for an injunction to restrain sale, alleging that the price is wholly inadequate and that the plant and equipment is fairly worth $70,000; that the disposition of the assets is not made in good faith, but is in fraud of the plaintiffs' rights, and for the purpose of defeating their claim for damages. The defendant company is perfectly solvent, having only nominal debts, with considerable material on hand, and with cash and United States treasury certificates amounting to over $63,000. The plaintiffs not only have no lien, but have as yet no decree, for an accounting. While a preliminary injunction against infringement has been issued, it would be idle to speculate as to the result on final hearing, or the probabilities as to plaintiffs' claim when a final adjudication is had. Under these circumstances, what is the legal situation? It goes without saying that the court has no power to compel the defendant to continue in business, or to expend large sums of money for the equipment of its plant, suitable to the demands necessary in installing a different fuel for its furnaces. What power, if any, has the court over the proposed liquidation of the company, the sale of its plant and property, for the purposes of dissolution and distribution? The answer, in my judgment, is not difficult. When a corporation is insolvent, it is so far civilly dead that its property may be administered as a trust fund for the benefit of its stockholders and creditors. A different situation altogether exists where the corporation is solvent. The distinction is clearly drawn by the Supreme Court in Hollins v. Brierfield Coal & Iron Co., 150 U. S. at page 383, 14 Sup. Ct. at page 129, 37 L. Ed. 1113, as follows:

"'When a court of equity does take into its possession the assets of an insolvent corporation, it will administer them on the theory that they in

No question is now involved as to the jurisdiction and power of the court below to supervise and direct any matter connected with the liquidation of the defendant corporation, and, as will be noted in the

equity belong to the creditors and stockholders, rather than to the corporation itself. In other words, and that is the idea which underlies all these expressions in reference to "trust" in connection with the property of a corporation, the corporation is an entity, distinct from its stockholders as from its creditors. Solvent, it holds its property as any individual holds his, free from the touch of a creditor who has acquired no lien; free also from the touch of a stockholder who, though equitably interested in, has no legal right to, the property. Becoming insolvent, the equitable interest of the stockholders in the property, together with their conditional liability to the creditors, places the property in a condition of trust, first for the creditors, and then for the stockholders. Whatever of trust there is arises from the peculiar and diverse equitable rights of the stockholders as against the corporation in its property and their conditional liability to its creditors. It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder.'

"The assets of this company are not in the custody of the court for any purpose whatever. Solvent, it had the right to operate its business as it deemed best, and if, in the judgment of its corporate officers, it was deemed wise to wind up its business and be dissolved in accordance with law, it had and has an undoubted right to do so; this, of course, on the theory that the company is acting in good faith. Fraud vitiates everything it touches, and a collusive and fraudulent sale is not binding upon him whose interests would be thereby defeated or impaired. As was said by the Supreme Court in Case v. Beauregard, 101 U. S. 690, 25 L. Ed. 1004: 'It has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him.'

"But here I am wholly unable from the evidence to find that the proposed sale is collusive or fraudulent. It is true that in the last fiscal year the defendant made in excess of $150,000, out of which it paid a bonded indebtedness of $50,000, and distributed some $60,000 to its stockholders. Part of this distribution was after the bill in equity for infringement was filed, but all of it before an injunction was asked to restrain the sale of its property. It is perfectly plain that the defendant had experienced considerable trouble in getting a supply of gas, and that the gas company had failed to renew its lease after demand, the lease expiring in the early spring of 1919, and that it was confronted with a very serious problem as to an adequate supply of fuel for the future. If gas was refused, or furnished in insufficient amounts, only two courses were open to the company: One, to expend from $50,000 to $100,000 to install gas producers; and the other, to go out of business. After careful consideration, by men deeply interested, widely experienced, and apparently honest, they chose the latter course. I cannot say that they were wrong. If my judgment were valuable, which it is not, I would say they were right. But certain it is that my judgment should not be substituted for theirs. The company having concluded to close down, to go out of business, it had a plant on hand which might or might not be used as a glass factory. If the court's injunction against infringement should ultimately stand, the machines with which the plant was equipped could no longer be used. To convert it into a hand plant would require the expenditure of $50,000 or more. If the plant stood idle, it would greatly and rapidly deteriorate, and it was not surprising, therefore, that an appraiser, apparently competent and disinterested, should have appraised the plant at $13,500. The price of the plant to be paid at the proposed sale was $4,000 in excess of the valuation.

"From all the circumstances, which I cannot stop to detail, I find that the proposed sale and disposition of assets was not collusive and fraudulent, but made in good faith. During the trial, for the purpose, as alleged by counsel.

opinion, that company, in its proposed course of invoking the aid of the state court in furtherance of its statutory dissolution stipulated:

"That any deviation from this stipulation, or from the legal settlement and liquidation of the defendant company's affairs, will justify the plaintiff in asking this court to resume its jurisdiction of supervising and directing any matter connected with the liquidation of the defendant company."

Under the situation that had arisen in the case, we are of opinion the court below was well within the range of that wide and wise discretion as to procedure which the circumstances called for it to exercise, and that it committed no error in refusing at that time and under those circumstances to grant an injunction.

We therefore approve and affirm the court's action, and remand the record, without prejudice to any application of the plaintiff for further or other relief, if a changed situation should arise and necessitate such relief.

of furnishing some evidence of value, plaintiffs' counsel stipulated on the record that the American Window Glass Company, one of the plaintiffs, would bid the sum of $25,000 for the plant, machinery, and equipment as it now is, with the right to purchase the supplies on hand at the market price at the time of the purchase, the bid to be paid in cash at the time of sale. Thereupon defendant's counsel stipulated on the record as follows: 'Counsel for the defendant company is authorized by its president to state that the proposition made by the plaintiff company to bid $25,000 for the property named in the proposition is acceptable, and that it will be taken as a bid made by the company at a public sale to be held by the trustees to be appointed in due course by the court having jurisdiction of the liquidation of defendant company's property. And they further stipulate that no distribution of the assets of the company will be made, either the proceeds of the sale of the property or any other property or money collected or received, except in accordance with law, and that notice will be given to the plaintiff company of any such distribution and of any account filed, or of any other important matter or act taking place in connection with the settlement of this company's affairs. It is further stipulated that any deviation from this stipulation, or from the legal settlement and liquidation of the defendant company's affairs, will justify the plaintiff in asking this court to resume its jurisdiction of supervising and directing any matter connected with the liquidation of the defendant company.'

"It also appears by the defendant's answer that it does not propose to sell any apparatus or method embodied or contained in any invention described in plaintiffs' bill for an injunction. It avers that the company does not intend to sell any such apparatus or method, and that any machinery or apparatus which it may sell will have removed therefrom any and all parts as to which any infringement could be claimed, and the defendant is willing that such dismantling of said machinery or apparatus as may be necessary shall be made satisfactory to the plaintiffs.

"From the foregoing facts and findings, I cannot possibly conclude that the sale of all the assets of the defendant under the direction of a court of competent jurisdiction, in accordance with the laws of Pennsylvania, for the purposes of dissolution of the company and distribution to its creditors and stockholders, could be deemed in any sense a dissipation of the assets and property of the defendant, or in any way an impairment or interference with the rights of the plaintiffs as they may ultimately be decreed. On the contrary, I am justified in the assumption that they will be held and distributed in accordance with law, having full regard to the rights of all parties, including the plaintiffs. When the sale occurs, the property will be started at the bid of the plaintiffs, and they are in a position to see that their rights are not impaired by the sale at an inadequate price.

"The motion for an injunction is overruled, and the rule discharged."