## PHILADELPHIA RUBBER WORKS CO. v. UNITED STATES RUBBER RECLAIMING WORKS et al.

(District Court, W. D. New York. October 8, 1920. On Settlement of Decree, December 23, 1920.)

1. **Patents ⊂⇒319(1, 3)—Rule for recovery for infringement stated.**

In equity the rule for recovering for infringement is that where the net profits earned by reason of the infringement do not sufficiently compensate the owner of the patent for its infringement, there may, in a proper case, be awarded damages in addition to the ascertained net profits, and punitive damages may be awarded in the court's discretion, but, ordinarily, the pecuniary gains arising from sales of an infringing article disclose the usefulness and commercial value of the thing invented, as well as its disadvantages, and may well constitute a guide to the true measure of damages.

2. **Patents ⊂⇒318(3)—Rule of recovery for process infringement stated.**

In suit for infringement of patent for process for reclaiming rubber from vulcanized rubber waste, defendants would be required to account for profits made from the use of the invention, less the cost of production, such profits being ascertainable on comparison with any other method of obtaining substantially similar results which were either in public use at the time of the infringement or available to defendants.

3. **Patents ⊂⇒318(3)—Patented processes, not available to defendants, not proper standard of comparison to ascertain defendant's profits.**

In suit for infringement of patent for a process, patented processes used by other manufacturers, not open to the public nor available to defendants, could not be used as a standard of comparison in ascertaining defendant's profits from infringement.

4. **Patents ⊂⇒318(3)—Substitute process, not complete prior to date of infringement, not available standard of comparison to ascertain profits.**

In suit for infringement of patent for a process, a process temporarily adopted by defendants when plaintiff's process was held infringed by the courts, could not be used as a standard of comparison to ascertain defendant's profits from infringement, where it was not shown to have been a completed process prior to the date of the infringement, for an infringer cannot avail himself, to mitigate the damages, of devices developed either by himself or others after the infringement.

5. **Patents ⊂⇒318(3)—Accounting limited to the precise advantage derived.**

In suit for infringement of a patent for a process, the accounting must be limited to the precise advantage derived, and, if another process is

available to an infringer which produces substantially the same result, but not so efficiently, then the advantage ordinarily is found in the increase of efficiency.

**6. Patents ⬚318(3)—Increased value of product dependent on process infringement held profits to be accounted for.**

In suit for infringement of patent for a process for reclaiming rubber from vulcanized rubber waste, where defendants contended that a large part of their profits from rubber treated by plaintiff's process were attributable to their special treatment of the rubber after devulcanization, by adding compounds to impart greater abrasive resistance and tensile strength to it, and that such treatment was an operation separate from the devulcanizing process, while plaintiff claimed that the special treatment was made possible solely by the appropriation of its devulcanizing process, and it appeared that upon devulcanization certain physical properties were imparted to the material, such as plasticity and an ability to absorb compounds, and that it was necessary to the salability of defendants' article that it should possess such special characteristics, which could only be acquired by the infringing process without regard to the subsequent addition of compounds, the principle applied that when the commercial value of an article is due to a patented improvement the owner of the patent may recover the total profits derived from its sale.

**7. Patents ⬚318(6)—Deduction from infringement profits of extra payments to officers not allowed.**

In suit for infringement of patent for a process, payments made to officers of defendant corporations beyond their regular salaries could not be deducted from the profits to be accounted for, it not appearing that defendants received any consideration for such expenditures.

**8. Patents ⬚318(6)—Deduction from infringement profits of legal and reorganization expenses not allowed.**

In suit for infringement of patent for a process, amounts paid by defendants to attorneys for conducting the litigation and for reorganization of defendants' business *held* not deductible from the profits to be accounted for.

**9. Patents ⬚318(6)—Apportioning general expenses measurably discretionary.**

In suit for infringement of patent for process for reclaiming rubber from vulcanized rubber waste, *held* that there was reasonable fairness in apportioning the general expenses equally between two mills of defendants, one using the infringing and the other a noninfringing process, under the rule that where the evidence is meager or where the existing circumstances seem to require a reasonable division of the total expenses of conducting a business, the court will exercise a reasonable discretion.

**10. Patents ⬚318(6)—Interest on capital invested to be deducted from profits.**

In suit for infringement of patent for a process, interest on the capital invested would be allowed as a credit to defendants, such invested capital including, not merely plant investment, but also cash on hand, accounts receivable and bills receivable.

**11. Patents ⬚319(3)—Infringement held not willful and wanton.**

In suit for infringement of patent for a process, where the validity of the patent was debatable, and one district judge had held it invalid, *held* that willful and wanton infringement could not be successfully urged, nor could malicious infringement, even though there was a continuance of infringement after decision by the lower court holding the patent valid and infringed, where, upon affirmance of the decree, the defendants at once ceased using the infringing process.

---

⬚For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**12. Patents ⟨☞⟩312(1)—Defendant infringers have burden of showing separable profits.**

In suit for infringement of patent for process for reclaiming rubber from vulcanized rubber waste, where defendants claimed deduction from profits because of gains from skillful services in the business and special treatment involving factory secrets unconnected with the process, defendants had the burden of proving that the gains were attributable to some other things used by it.

**13. Patents ⟨☞⟩318(5)—Interest allowed from date of decree awarding profits.**

Where infringement was not wanton or malicious, interest would be allowed, not from the date of affirmance of interlocutory decree, but from the date of the decree awarding profits.

On Second Supplemental Bill.

**14. Corporations ⟨☞⟩590(4)—Patents ⟨☞⟩287, 290—Successor of defendant purchasing its assets and assuming its debts pending accounting for infringement of patent could be joined as defendant.**

In suit for infringement of patent for a process, where it appeared that another company had, while accounting proceeding was pending and with knowledge thereof, bought the assets and assumed the liabilities of a defendant company, plaintiff could, under rule 26 (198 Fed. xxv, 115 C. C. A. xxv), have the successor corporation included as a defendant, by supplemental bill, even though the patent in suit had expired before the successor company came into existence, for the assets acquired from the predecessor constitute a trust fund for the payment of the latter's debts.

In Equity. Suit by the Philadelphia Rubber Works Company against the United States Rubber Reclaiming Works, in which the defendant's successor, the United States Rubber Reclaiming Company, Inc., was brought in as defendant, and later the Madison Tire & Rubber Company, Inc., was also brought in as defendant. On accounting in patent suit. Decree directed in accordance with opinion.

See, also, 276 Fed. 613.

Charles Neave, William G. McKnight, and Alan N. Mann, all of New York City, for plaintiff.

Hans V. Briesen, of New York City, and Simon Fleischmann, of Buffalo, N. Y., for defendants.

HAZEL, District Judge. The plaintiff sued the United States Rubber Reclaiming Works in equity for infringement of letters patent No. 635,141 of October 17, 1899, issued to Arthur H. Marks for a process "for reclaiming rubber from vulcanized rubber waste," and consisting of an alkali process adaptable to reclaiming rubber scrap of boots and shoes, and the more highly vulcanized rubber mechanical goods scrap, hose, air brake hose, and tires, especially such as are used on automobiles.

It is shown that the Diamond Rubber Company acquired the letters patent in issue from the inventor, and afterwards, with the B. F. Goodrich Company, merged into the Alkali Rubber Company, which company, in January, 1910, merged with plaintiff's predecessor, the Philadelphia Rubber Company, which theretofore was engaged mainly

⟨☞⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in reclaiming rubber boots and shoes by means of an acid process described in the prior patent to Mitchell, No. 395,987 of January 8, 1899. At the time of the merger the latter company acquired the patent in suit—a patent that was afterwards held by this court to be valid and infringed in the year 1915 by the defendant, United States Rubber Reclaiming Works, and also, after affirmance of the decree, by its successor, the United States Rubber Reclaiming Company, Inc., which was brought into this case by supplemental bill and answer. The opinions on the interlocutory decree and affirmance will be found in (D. C.) 225 Fed. 789 and (C. C. A.) 229 Fed. 150, respectively, and their correctness is not now challenged.

A reference was had to a master in chancery to take an account of the profits and damages sustained as a result of the infringements, but the master, William Macomber, Esq., after listening to the entire evidence on both sides, died before making his report to the court. The parties then stipulated that the evidence taken in the accounting proceeding and the arguments of counsel thereon be submitted to this court for adjudication. A hearing has now been had, and full and complete briefs, comprehensively setting forth the claims, concessions, and contentions of the respective parties, have been considered. As the present proceeding does not arise on exceptions to any master's report, the issues are not specifically narrowed or defined. The general claim of plaintiff on the evidence is that profits and damages are recoverable herein on several theories, or, as counsel stated orally, each element relating to profits and damages bears upon the other without the damages and profits, however, being added together; that plaintiff has the legal right to show both profits and damages, and then "to take whichever is the larger," and if the evidence is deemed insufficient to show any pecuniary gains and profits, or an inadequate amount, then under the proofs the court may compute actual damages on an established or reasonable royalty or on loss of sales. Hence it is understood that both profits and damages are not sought herein.

[1, 2] The rule for recovering in equity for infringement of a patent is that where the net profits earned by reason of the infringement do not sufficiently compensate the owner of the patent for its infringement, there may, in a proper case, be awarded damages in addition to the ascertained net profits. Birdsall v. Coolidge, 93 U. S. 64, 23 L. Ed. 802. And punitive damages may be awarded in the discretion of the court. Malleable Iron Range Co. v. Lee (C. C. A.) 265 Fed. 896. But ordinarily the pecuniary gains arising from sales of an infringing article disclose the usefulness and commercial value of the thing invented as well as its advantages, and may well constitute a guide to the true measure of damages. In Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, the Supreme Court substantially said that the question to be determined in cases of infringement of a patent is what advantage was derived by the infringer from using the "invention over what he had in using other processes then open to the public and adequate to enable him to obtain an equally beneficial result." In Philp v. Nock, 84 U. S. (17 Wall.) 460, 21 L. Ed. 679, it was held that where damages were sought in infringement suits in the form of

a royalty paid by licensees, the amount to be recovered would be regulated by that standard unless peculiar circumstances required another standard, and that, if the test of the amount paid for royalties could not be applied, the plaintiff would be entitled to an amount which would compensate him for the injury to which he had been subjected; and, further, that profits earned by defendant and those lost by plaintiff were among the elements that might be considered. In Tilghman v. Proctor, 125 U. S. 146, 8 Sup. Ct. 894, 31 L. Ed. 664, the Supreme Court, speaking of profits for which an infringer may be required to account, substantially said that a court of equity would not require the party injured to proceed at law to recover damages, but as an equivalent or substitute for legal damages would make compensation computed and measured by the same rule that courts of equity apply in cases of trustees for improper use of the trust property; "in other words [quoting from the opinion] the fruits of the advantage which he derived from the use of that invention, over what he would have had in using other means then open to the public and adequate to enable him to obtain an equally beneficial result." Under such a rule the defendants would be required to account for profits made from the use of the invention, less the cost of producing the article, such profits being ascertainable on comparison with any other method of obtaining substantially similar results which were either in public use at the time of the infringement or available to defendants.

Rubber scrap was admittedly reclaimed by an acid process by both plaintiff and the defendant U. S. Rubber Reclaiming Works under expired patents, many years before the invention in suit, but such prior processes were limited to successfully reclaiming lightly vulcanized waste or worn rubber boots and shoes; highly vulcanized waste such as automobile tires could not be efficiently reclaimed by it. Indeed, according to the evidence, it was not only impracticable for economic reasons to adapt the known acid process to mechanical goods scrap, but the product was not commercially marketable. Neither before the issuance of the Marks patent, nor during its use by defendants was there open to the public use, or to the defendants, any process which compared with plaintiff's process in the production of beneficial results. Plaintiff claims that the reclaiming of automobile tires or highly vulcanized rubber scrap by defendants (the old and new company) for upwards of five years, from 1911 to December 3, 1915, inclusive, was entirely due to the invention of the patentee; that no standard of comparison existed at the date of the infringement which was available to defendants. But this broad claim is challenged as being unsupported by the evidence.

In the former opinion by this court it was held that mechanical scrap rubber consisting of a highly vulcanized material was not efficiently devulcanized by any known acid process, but that in its use an inferior article was produced. In this proceeding it is shown that efforts to adapt its beneficial use to commercial purposes were repeatedly made at a considerable expense, but without the procurement of the desired results. I find that highly vulcanized rubber scrap reclaimed by the known acid process would not age properly and be-

came oxidized. The comparatively small quantity of sulphur in the waste, and the varying physical properties possessed by the more highly vulcanized material, tended to limit, and in fact did limit, the use of the acid process to the lesser vulcanized material. The expert witnesses are not in agreement as to this, but I think the unadaptableness of the known acid process for devulcanizing highly vulcanized rubber waste is fairly proven. It could not compete with the product of the patent in suit, and hence affords no standard of comparison for ascertaining the recoverable damages herein. The defendant United States Rubber Reclaiming Works began reclaiming mechanical scrap rubber, including automobile tires, in its sawmill No. 2 on February 1, 1911, by the alkali process in suit, and presumably selected it in preference to any other means because of the beneficial results that were known to follow, and in addition because they believed the Marks patent invalid. Infringement was discontinued only upon affirmance of the decision holding the patent valid and infringed. The defendants then adopted a noninfringing two-step alkali process—one more expensive—in place of plaintiff's one-step process, but resumed the latter immediately on the expiration of the Marks patent.

[3-5] The first question is, Should the concededly noninfringing process be considered the standard of comparison for ascertaining the recoverable profits, or should certain other processes owned by others, accomplishing the same result, be so considered? Rubber waste consisting of automobile tires could be reclaimed by various methods used by manufacturers, but such methods and processes were patented. They were not open to the public or available to defendants, and they are therefore not believed to be a basis for recovery herein. American Pneumatic Co. v. Snyder (D. C.) 241 Fed. 274. The case stands no differently with reference to the specific process temporarily adopted by defendants, for the reason that it is not proven to have been a completed process prior to the date of the infringement in question. In Expanded Metal Co. v. General Fireproofing Co. (D. C.) 247 Fed. 899, it was correctly decided, I think, that an infringer of a patent could not avail himself of devices developed either by himself or others after the infringement, to mitigate the damages. It is also the law that the accounting must be limited to the precise advantage derived. Westinghouse v. Wagner, 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222. If another process is available to the infringer which produces substantially the same result, but not so efficiently, then the advantage ordinarily is found in the increase of efficiency. Columbia Wire Co. v. Kokomo, 194 Fed. 108, 114 C. C. A. 186. The noninfringing alkali process later adopted by defendants, and known to them since 1906, is not shown to have been advantageously used at any time before the infringement. In its adaptation in 1915 it may fairly be assumed that information was acquired by defendants enabling them to develop or modify the Marks process, and any modified process was not, in my opinion, a proper standard of comparison.

The evidence in its entirety shows that defendants' product essentially derived its marketability and value from the unlawful appropriation of the process in litigation. This brings me to a consideration of

the profits earned by the defendants during the five years in which they admittedly used the infringing process, to wit, the years 1911, six months of 1912, and to December 15, 1915, inclusive. The proofs show that during such time they bought mechanical goods scrap amounting to $2,500,000 which was treated by them in mill No. 2 in accordance with the Marks process. The reclaimed rubber was afterwards sold for $4,160,000. The net profits, according to plaintiff's corrected table of computation, are $582,555.91, after allowing for total cost of production. Different adjustments leaving certain items in dispute for addition to the profits or subtraction therefrom are concretely shown in the following table submitted by plaintiff and defendant as a basis for determining the conclusions of the court:

|  | Plaintiff. | Defendant. |
|---|---|---|
|  | $610,581.66 | $610,581.66 |
| Add improper deductions: |  |  |
| Special expenses | 21,507.30 |  |
| Legal expenses | 21,004.18 |  |
| Reorganization expenses | 3,461.73 |  |
|  | $656,554.87 |  |
| Deduct: |  |  |
| Interest on capital | 84,981.44 | 215,391.22 |
|  | $571,573.43 | $395,190.44 |
| Deduct: |  |  |
| Eliminating losses in 1911 and part of 1912 of | 10,982.48 |  |
|  | $582,555.91 |  |
| Change in apportioning expenses | $122,932.57 |  |
| Profits on compounds | 179,309.24 |  |
| Profits on other operations | 75,949.16 | 378,190.97 |
|  |  | $16,999.47 |

In the total are included profits derived from mill No. 2 from all sources, viz. devulcanization of scrap, compounds, purchase of scrap, profits from laboratory research, etc. According to Defendants' Exhibit (Schedule A, page 830 of Record) the profits were $16,989.47. What deductions, if any, should be made from the above table, showing a net profit of $582,555.91? Defendants claim a material deduction on the ground that the asserted profits are largely the result of treatment and services after devulcanizing the waste, and that the accountants adopted a wrong method.

[6] In Defendants' Exhibit 210 it is shown that many pounds (1,-558,130) of ingredients, costing $129,449.78, were introduced into the rubber after devulcanization to impart greater abrasive resistance and tensile strength to it; that by such treatment to which a large part of the profits, as claimed by defendants, are attributable, there was realized $179,309.24 as shown by Exhibit 210 (Schedule B). Defendants' position is that the compounding of ingredients was a separate operation from the devulcanizing process, while plaintiff insists that the introduction of the compounds was made possible solely because of the appropriation of its process. It satisfactorily appears from the evi-

dence that upon devulcanizing the rubber waste certain physical properties are imparted to the material such as plasticity and ability to absorb compounds—characteristics differing from those imparted by the acid process. As stated in plaintiff's brief:

"These characteristics result in a new product which could be attained only by depolymerizing the waste or breaking down the rubber molecules formed during vulcanization."

In my opinion it was necessary to the salability of defendants' article that it should possess such special characteristics which could only be acquired by the infringing process without regard to the subsequent addition of compounds. The principle enunciated in Carborundum Co. v. Electric Smelting Co., 203 Fed. 976, 122 C. C. A. 276, wherein it is held that when the commercial value of an article or mechanism is due to a patented improvement the owner of the patent may recover the total profits derived from its sale, is thought to apply.

[7] Special Expense.—Payments amounting to $21,507.30, made to officers of the defendants beyond their regular salaries, should be added to the profits, since it does not appear that defendants received any consideration for such expenditures. Lee v. Malleable Co. (D. C.) 247 Fed. 975.

[8] Legal and Reorganization Expenses.— The amount of $21,004.-18, paid to attorneys for conducting this litigation and $3,461.73, for reorganization of defendants' business, are items unquestioned by defendants, and they should be included in the net profits. National Folding Box & Paper Co. v. Dayton Paper Novelty Co. (C. C.) 95 Fed. 991.

[9] Apportioning General Expenses.— The method of apportioning the general expenses of running the two mills and making division to the infringing business is questioned. The evidence shows that defendants operated jointly mill No. 1 using in its operation the acid process, and mill No. 2 of later construction, the infringing process. There existed a joint bookkeeping arrangement which obviously required an effort to fairly apportion the total expenses to both mills. The accountants distributed the general selling expenses between both mills upon the basis of the percentage that the product of each mill bore to the total of both mills, while the general administration expenses and labor were divided upon the basis of the percentage that the rubber scrap reclaimed by each mill bore to the total produced by both mills. Defendants oppose this method on the ground that an equal division would be more fair and proper. In its books an equal division was made, which, if applied on the accounting herein, increases the expenses of the alkali mill by $122,932.57, and correspondingly lessens the asserted net profits. There was evidence tending to show that for the years 1911 and 1914 the overhead expense of the infringing mill was approximately 90 per cent. of the total expense of both mills, and in the subsequent years approximately 75 per cent.

The testimony on this point is criticized by plaintiff on the ground that defendants' witnesses Low and Brewster merely gave estimates

based upon their recollection after the lapse of a number of years. I am persuaded, however, that there was reasonable fairness in apportioning the expense equally between the mills, and the accountants should have distributed the expenses accordingly. The alkali mill no doubt entailed a far greater expense than the acid mill, even more perhaps than upon the adopted plan of bookkeeping of an equal division. In a case like this the court must often exercise a fair and reasonable discretion, since there is no positive rule of damages or for estimating profits. Especially is this true when the evidence is meager, or where the existing circumstances seem to require a reasonable division of the total expenses of conducting a business. Such apparently was the rule adopted in Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U. S. 641, 35 Sup. Ct. 221, 59 L. Ed. 398. The contention that defendants have benefited by the infringement beyond the assessable net profits, by enhancing their other branches of business, or at least by reducing the overhead expense thereof, is purely conjectural and speculative, and in my judgment is insufficient reason for differently apportioning the expenses, of the mills. This item increases the expense, of the mill, and should be deducted from plaintiff's statement of profits.

[10] As to interest on the investment: That interest on the capital, when ascertained, must be allowed as a credit to the infringer, under the authority of Oehring v. Fox Typewriter Co., 251 Fed. 584, 163 C. C. A. 578, is undoubted, especially since in that case the Circuit Court of Appeals said that such a rule accords with business practice and common sense. There is a wide disparity between the different figures submitted as to the total interest on capital invested in defendants' business during the infringing period, plaintiff urging that the true amount is $84,981.44, which includes interest on property value, i. e., the real estate, building, and machinery, but excludes the elements of cash on hand, accounts receivable, and bills receivable upon which the total interest amounts to $215,391.22. In the Oehring Case interest was allowed on the capital invested, including accounts and bills receivable. It was urged in opposition that such items were not proper credits, but the learned court said in its opinion:

"The items which constitute the investment in the case at bar are (broadly classified) land, buildings, machinery, fixtures, light and power plant, accounts, and bills receivable. These all go to make up the capital which defendant had, invested in the various departments of its business, and while a list of these items may be called an inventory, that inventory shows the investment."

It would seem therefore that interest on all the elements that go to make up the capital invested is to be credited to the infringer. It is pointed out that the court refused to consider the specific objection to the inclusion of bills and accounts receivable as credits because the record did not disclose an exception to the calculation of the master. The refusal, however, as I read the opinion, was based upon the ground that an appellate court would not "examine the correctness of the constituent items entering into the final calculation as found by the trial court, where error was not assigned." This does not to my mind imply a failure to consider the question of credits to be given an infringer for interest on the specified elements constituting the capital actually in-

vested in the business. In requiring a deduction from the net profits for interest on the capital actually invested, including money in bank, bills and accounts receivable, it should be borne in mind that money, and accounts and bills convertible into money in the main were used to purchase material and supplies of all kinds for the purpose of operating the infringing process. True such capital, or a large part thereof, was received from sales of the infringing product, but since it was continuously used to finance the enterprise, the interest thereon did not in fact operate to reduce the gains and profits. Although an infringer has been said to be a trustee for the owner of the patent, and must account for the pecuniary gains made by its appropriation, yet if money had been borrowed to conduct the business, concededly credit therefor to the infringer would be required. So I think that the fact that the receipts were deposited in the bank and applied to paying the debts and obligations of the concern entitled defendants to credit for the interest amounting to $215,391.22 as shown by Defendants' Exhibit 210.

[11] I am unable to sustain plaintiff's claim that the infringement in question was wanton and willful. The validity of the Marks patent, from the outset to the final decision by the Circuit Court of Appeals, was debatable, and defendants, by their counsel, in good faith interposed defenses attacking its validity and denying the infringement, and indeed, Mr. Justice Clark, then District Judge of the Northern District of Ohio, and now Justice of the Supreme Court, in an action brought by plaintiff against the Portage Rubber Co., 227 Fed. 623, had held it invalid. Therefore malicious infringement cannot be successfully urged, even though there was a continuance of infringement after the decision by this court holding the patent valid and infringed because upon affirmance of the decree the defendants at once ceased using the infringing process. Fairbank v. Windsor, 124 Fed. 200, 61 C. C. A. 233; Brown Bag Filling Machine Co. v. Drohen, 175 Fed. 576, 99 C. C. A. 192.

[12] Profits on Other Operations.—This item, amounting to $75,-949.16, taken from plaintiff's statement (see Defendants' Exhibit 210, Schedule A) of gains and profits, relates to various details of operating the infringing process, and rendering the devulcanized rubber marketable. Defendants contend for a deduction from the earnings amounting to $92,948.63, on the ground that in the main the item relates to unpatented features after the reclaiming operation, viz.: skillful services in the business and special treatment involving factory secrets unconnected with the process and which absorbed 81.71 per cent. of the entire manufacturing expense. Upon this phase of the controversy the burden is upon the defendants to prove that the gains are attributable to some other things used by it. Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 614, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653. There is testimony that some advantage was realized from skillful purchases of rubber scrap, laboratory research for making different grades of rubber, the use of various kinds of rubber scrap in combination for making a specialty tire, additional treatment after the

devulcanized waste is in a plasticized condition, and washing or cutting the devulcanized rubber into sheets or forms. It is claimed that such labor and treatment produced additional profits, and therefore that the patent in suit created only a part of the net profits of the entire business, viz. $16,999.49, or 18.29 per cent. of the gains; that as plaintiff gave no evidence to show what amount was attributable to the patent, and what amount attributable to the additional services and treatment, there can be no recovery of the entire profits. But since it has been proven, as hereinbefore pointed out, that the gains realized on sales of the mechanical scrap rubber were wholly attributable to the use of the infringing process, there will be no deduction made on this ground. This is not a case where the plaintiff is required to separate the profits owing to the part use only of its process to achieve the result, and, even though a portion of the gains were due to the specified additional treatment and labor, the defendants are not relieved, for, as said in Carborundum Co. v. Electric Smelting Co., supra, it was subsidiary or incidental to the sale of the product. And as said in Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 Sup. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653:

"On established principles of equity, and on the plainest principles of justice, the guilty trustee cannot take advantage of his own wrong. The fact that he may lose something of his own is a misfortune which he has brought upon himself; and if, as argued, the fund may have been made by the use of other patents also, for which he may be liable in another case, it is again a misfortune which he has brought upon himself and an instance of a double wrong causing double liability. He cannot appeal to a court of conscience to cast the loss upon an innocent patentee, and by judicial decree repeal the provision of Rev. Stat. § 4921, which declares that in case of infringement the complainant shall be entitled to recover the 'profits to be accounted for by the defendant.'"

There is dispute as to the value of the ground upon which mill No. 2 was erected. On the books of the defendants the value of the land for both mills was given at $69,000, and the accountants believed $35,-000 to be a fair value of the ground upon which mill No. 2 was erected. The estimate of the witness Stagg apparently was based mainly on an appraisal of the entire land made in 1913 by the American Appraisal Company at $69,156. It is quite believable that there was a subsequent increase in value as testified by defendants' witnesses, beginning July 1, 1910, from which time interest upon the investment should be allowed, and not from April 1, 1911, when the infringement began. The value of the land as given in Defendants' Exhibit 210 is $64,350 to June, 1912, and $65,850 to December 31, 1915, respectively, and the interest thereon must be credited. No allowance is made, however, for using other buildings aside from mill No. 2 to operate the process; the evidence in relation to such use being indefinite and uncertain.

A summary of the total profits and deductions to which plaintiff and defendants are respectively entitled is as follows: The net profits amounting (corrected figure) to $582,555.91 (including the special expenses amounting to $45,973.21), from which total gains and profits, however, there should be deducted interest on the investment as here-

in determined, amounting to $215,391.22, instead of $84,981.44, and $122,932.57 additional costs and expenses, leaving a balance of $244,-232.12, subject, however, to a deduction of the increased land values and interest thereon as herein determined, the precise amount to be provided for in the decree.

[13] Interest on Judgment for Profits.—Inasmuch as I believe that the infringement was not wanton or malicious, I incline to the view that I ought not to allow interest on the recovery from the date of the affirmance of the interlocutory decree, but, following the decision in B. F. Goodrich Co. v. Consolidated Rubber Tire Co., 251 Fed. 617, 163 C. C. A. 611, I deem it fair to allow interest from the date of the decree awarding plaintiff profits herein. It is unnecessary to pass upon any other questions argued at the bar or to specifically treat of recovery of damages from loss of sales or on the theory of a reasonable royalty. A decree may be entered stating the amount of gains and profits in accordance with this opinion, with costs.

## On Second Supplemental Bill.

[14] A second supplemental bill has been filed herein to include the Madison Tire & Rubber Company, Inc., as a defendant on the ground that it has bought the assets and assumed the liabilities of its predecessor, the defendant United States Rubber Reclaiming Company, Inc. The transfer and assumption of liabilities is admitted. The purchase was made with knowledge of the pendency of this accounting proceeding. Under such circumstances I think that the transferee is liable to the full amount of the judgment, and plaintiff has the legal right to have it included as a defendant. Under rule 26 (198 Fed. xxv, 115 C. C. A. xxv) of the new equity rules, different causes of action may be joined, the only restriction on plaintiff being that the causes shall be cognizable in equity and relate to rights belonging to him.

Defendant opposes plaintiff's motion, asserting that the patent in suit expired in 1916, and the Madison Company only recently came into existence, and not having wronged plaintiff, should not be sued by way of supplemental bill; indeed, that the transferee is in the position of surety for the liquidated amount of plaintiff's claim, and when judgment is entered herein it will have the right to have decreed a lien against defendant's assets unless the judgment is paid. I think that as the transferee knowingly acquired the assets of its predecessor and took over the business while an infringement was pending, and in addition assumed any liability arising therefrom, it may be brought into the case at the instance of plaintiff by supplemental bill. Certainly there existed a liability, and an original suit could be entered; but, since the parties are practically the same by reason of the assumption of liability by the successor company, and the subject-matter is the same, I can see no sound reason for striking out the supplemental bill. See Hibernia Insurance Co. v. St. L. & M. O. Trans. Co. (C. C.) 13 Fed. 516; Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 127 C. C. A. 184; Okmulgee Glass Co. v. Frink, 260 Fed. 159, 171 C. C. A. 195. Although the adjudications cited do not expressly decide that a

transferee of the property and business of an infringer may, during the pendency of the infringement suit, where the patent has expired, be made a defendant by supplemental bill, yet the principle therein stated would seem to permit bringing into the case the successor company, for the assets acquired from the predecessor, after all, constitute a trust fund for the payment of the latter's debts. So ordered.

### On Settlement of Decree.

Both sides agree that certain matters of computation and of fact set forth in the original opinion filed in this case October 8, 1920, should be corrected. On investigation corrections therein are made in the following particulars:

1. On page 6 thereof (see 276 Fed. 606), stating that the infringement continued during "the years 1911, six months of 1912, and to December 15, 1915, inclusive," should read, "the years 1911 to December 3, 1915, inclusive."

2. On page 8 (see 276 Fed. 607) it is said that defendant was not entitled to deduct special expenses, legal and reorganization expenses amounting to $45,973.21, which were accordingly added to the aggregate profits, but I am now advised that the accountants applied only a part of the amount of $45,973.21 to running mill No. 2, and that the part so used only should be added to the profits, thus increasing them by $22,986.60 instead of $45,973.21.

3. In the third last paragraph of the original opinion I referred to interest on the increased value of defendant's land. Such interest, however, appears to have been included in the total figures of $215,391.22 as per Defendant's Exhibit 210. It is also stated by me that no allowance would be made for using other buildings except mill No. 2. The value of such other buildings appears in column 2 of Exhibit 210, and the interest thereon at 6 per cent. for the periods in question is stipulated at $18,370.50, which amount, upon deduction from $215,391.20, leaves $197,020.70 as the total amount of interest on investment allowed.

4. The summary set forth in the second paragraph is revised to read as follows:

The net gains and profits amount to $610,581.66, from which there must be deducted $197,020.72, interest on the investment, and the sum of $122,232.57, additional costs and expenses, leaving a balance of $290,628.57 subject, however, to the addition of the losses in 1911 and part of 1912, amounting to $10,982.48 and 50 per cent. of the item for special legal and reorganization expenses, to wit, $22,986.61, making a total of $324,597.46, the amount which plaintiff is entitled to recover herein.

A rehearing was suggested by counsel for defendants upon the point relating to the noninfringing process known to defendants in 1906 on the ground that the court acted upon an assumption that in using the said process in 1915 after the affirmance by the Circuit Court of Appeals of the decision holding the patent valid and infringed defendants had obtained information during the period of infringement which

enabled them to develop or modify the Marks process in suit. When I wrote the opinion on the question of recovery of profits it was my view that the 1906 process could not have been used for reclaiming automobile tires; it had not been used for such purposes. The testimony of Brewster was inadequate on the point. True he testified that after ceasing to use the Marks alkali process he adopted a process the source of which was from his own knowledge and experience, and the knowledge and experience of coemployees. The testimony does not disclose just when this new process first became known to the defendants. Neither the process of 1906 nor that used in 1915 by defendants is described, and it seemed to me that the evidence was wholly insufficient to prove that the noninfringing process was in existence and open to public use in its completed form at the time when the defendants first began infringement of the process in suit. I retain this view after further reflection.

The amount recovered it is true is very large, and if the evidence permitted awarding a more conservative amount by applying a different rule for the recovery of damages I would adopt it; but the proper rule on the evidence for measuring the compensation is, I think, as pointed out before, that relating to recovery of the gains and profits earned by the defendants during the time of the infringement.

I will withhold signing the decree submitted by the plaintiff until January 3, 1921, to afford an opportunity to defendants to perfect their appeal. So ordered.