## SAFETY CAR HEATING & LIGHTING CO. v. UNITED STATES LIGHT & HEATING CO. et al.

(District Court, W. D. New York. August 21, 1924.)

**1. Corporations ⬅579(2) — Reorganization cannot affect creditors.**

A reorganization of an insolvent corporation, whether by agreement between stockholders and creditors or through court procedure, cannot affect nonassenting creditors, and its assets in the hands of the new company remain subject to a lien for their claims.

**2. Corporations ⬅579(2)—Creditors may follow assets in hands of reorganized company.**

Creditors of a corporation whose debts have been assumed by a reorganized company are not limited to their remedy by an action at law based on the legal assumption, but may resort to equity to enforce their lien on the assets and property acquired from the old company.

**3. Patents ⬅310(10) — Reorganized corporation assuming debts of old company may be brought into infringement suit by supplemental bill.**

After an interlocutory decree in favor of complainant in an infringement suit and an order for accounting, the property of defendant corporation was sold in a receivership suit in the same court to a reorganized company under an order of sale providing, inter alia, that the purchaser should assume all unmatured obligations of defendant, "including all claims and damages for alleged infringement" of patents. Held, that complainant, after final decree, might by supplemental bill bring in the reorganized corporation and assert an equitable lien on the property acquired from the original defendant.

**4. Receivers ⬅133—Construction of order of sale; "unmatured obligations"; "damages."**

In an order for sale by receivers, requiring the purchaser to assume all unmatured obligations of defendant, including all claims and damages for alleged infringement of patents, the word "unmatured" may properly be held to include any debt which is contingent or in which the amount is yet to be determined, and the word "damages" is broad enough to include profits for which decree was subsequently entered in an infringement suit.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage —Damages.]

**5. Corporations ⬅580 — Complainant in infringement suit held not estopped by laches to enforce decree against reorganized corporation.**

Delay in completing the accounting in an infringement suit held not to constitute laches which estopped complainant to enforce the final decree against a reorganized corporation which purchased the property of defendant and assumed its liability, where the new corporation actively participated in the hearings and .was in part responsible for the delay, and where it did not operate to the disadvantage of any party in interest.

**6. Corporations ⬅579(1) — Trustee under mortgage of reorganized corporation held to take subject to conditions on which it purchased the property of the old corporation.**

The trustee under a mortgage securing bonds of a reorganized corporation, which participated in the reorganization and had knowledge that the property of the old corporation was purchased from receivers under an order of sale containing conditions and imposing liability on the purchaser, held charged with notice of the obligations assumed and' to have taken its mortgage subject thereto.

**7. Corporations ⬅580—Persons acquiring interest in property of reorganized corporation proper parties to bill against reorganized corporation.**

Persons subsequently acquiring interests in the property of a reorganized corporation, purchased from receivers of the old corporation, with an assumption of certain of its obligations, held proper parties to a supplemental bill to enforce one of such obligations by imposing an equitable lien·on the property.

In Equity. Suit by the Safety Car Heating & Lighting Company against the United States Light & Heating Company· and others. On supplemental bill. Decree for complainant.

This is a supplemental bill of complaint on the equity side of the court. The original bill against the United States Light & Heating Company of Maine (hereinafter called the old company), filed January 15, 1912, alleges infringement of letters patent, and prays for an injunction and award of damages and profits. On February 15, 1915, the patent sued on was held valid and infringed by this court ([D. C.] 222 F. 310, affirmed 223 F. 1023, 138 C. C. A. 651). Prior thereto, and after filing the original bill in an action against the old company brought by the Central Trust Company of New York, equity receivers were appointed, and afterwards on July 23, 1914, a Stockholders' Protective Committee was organized to effect a plan of reorganization of

the insolvent old company. On June 3, 1915, the assets were directed by this court to be sold by the receivers. The order of sale, paragraph 10, provided:

"The purchaser shall assume all unmatured obligations of the defendant United States Light & Heating Company arising out of the operations of the plant and business of the defendant as a going concern, including all claims for damages for alleged infringement by the defendant of letters patent of the United States."

The real and personal property was subsequently sold to the Stockholders' Protective Committee on its bid of $1,100,000. Prior thereto, on June 30, 1915, plaintiff sought to stay the sale and applied for leave to file its unascertained claim for damages with the special master appointed in the interlocutory decree, but in view of the provision in the order of sale just quoted the application was denied. At the receivers' sale of the assets on July 1st, an attorney for plaintiff gave notice to the bidders, prior to the receivers' sale, of plaintiff's claim arising out of the infringement suit and stating that the sale was subject to its unliquidated claim and that payment would be required in liquidation. On July 31st the receivers' sale was confirmed, and the court ordered a delivery of the deed to the purchaser, the Stockholders' Protective Committee, which, prior thereto, on June 28, 1915, had organized a successor company, the United States Light & Heat Corporation, hereinafter called the new corporation. The receivers' deed, dated July 1, 1915, was to the new corporation; the Stockholders' Protective Committee having assigned its bid to it. Attached to the deed is the assignment of the bid, and it is recited in the deed of conveyance that the new corporation assumed all the obligations and liabilities under said bid and under the terms of sale as contained in the order of the court directing such sale. The deed also embodied a clause reading as follows:

"This grant, conveyance, and assignment is subject to all of the obligations and indebtedness of said receivers, party of the first part, as of the first day of July, 1915, and to all the unmatured obligations of the parties of the second part arising out of the operations of the plant and business of the said party of the second part as a going concern, all of which said obligations and indebtedness of the receivers and unmatured obligations of the creditor so specified are hereby assumed by the purchaser, which agrees to pay the same. * * * "

Out of the proceeds of sale realized by the receivers all creditors except the plaintiff were paid in full. On July 26, 1915, the new corporation made its trust deed or mortgage to the Guaranty Trust Company of New York (trust deed dated June 1, 1915) to secure an issuance of $1,000,000, 20-year gold bonds, which were all issued by July, 1916, and are owned by divers persons. The preferred and common stock of the new corporation has been transferred and dealt in in large blocks and has passed to the stockholders of the old company and other persons who were not original stockholders, but who acquired their holdings since the reorganization. It is also shown that the Willys corporation loaned to the new corporation in 1918 upwards of $800,000 to enable the manufacture by it of electric batteries and to enlarge the plant, and this indebtedness was subsequently postponed to other indebtednesses so as not to interfere with creditors of the new corporation. The capital stock was increased to $1,500,000 par value, the stock being classified as preferred A stock, of which the Willys corporation agrees to take $800,000 at par of the issue in payment of its claim. Before acceptance, however, of the stock and cash, the Willys corporation also went into equity receivership, and in 1923 its receivers assigned its debt to Mr. Miniger, who was president of the new corporation and who is one of the interveners herein. Mr. Miniger bought the claim for $500,000 and accepted preferred stock in payment.

The special master in the infringement suit against the old company continued his inquiry at various times from July 20, 1915, to May 26, 1923, when he filed his report awarding the plaintiff $501,180.32 profits. Exceptions filed to the report were overruled, and plaintiff filed its supplemental bill with leave of this court against the new corporation and Guaranty Trust Company of New York as trustees, etc.

The plaintiff in its bill asserts an equitable lien on the assets of the United States Light & Heating Company taken over by the new corporation under the decree and deed on the ground that the deed expressly provided that the property sold by the receivers under direction of the court was transferred and conveyed subject to plaintiff's claim, and that its lien is superior to the mortgage lien of the defendant Guaranty Trust Company.

The defenses interposed are that this court is without jurisdiction inasmuch as the supplemental bill seeks to establish assumption of liability by the new corporation, an allegation that is denied, and accordingly respondents are entitled to trial by jury, misjoinder of causes, nonjoinder of parties, estoppel by laches, and statute of limitations.

Randolph Parmly, of Jersey City, N. J. (George Clinton, of Buffalo, N. Y., Van Vechten Veeder, of New York City, Frank A. Abbott, of Buffalo, N. Y., and Henry T. Stetson, of New York City, of counsel), for plaintiff.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (Daniel J. Kenefick and Charles P. Franchot, both of Buffalo, N. Y., of counsel), for defendant United States Light & Heat Corporation.

Stetson, Jennings, Russell & Davis, of New York City, and Dudley, Stowe & Sawyer, of Buffalo, N. Y. (Ansley W. Sawyer, of Buffalo, N. Y., and Thomas Garrett, Jr., of New York City, of counsel), for defendant Guaranty Trust Co. of New York.

Tracy, Chapman & Welles, of Toledo, Ohio (Thomas H. Tracy and Frank M. Cobourn, both of Toledo, Ohio, of counsel), for interveners.

HAZEL, District Judge (after stating the facts as above). The paramount contention of the new corporation, and emphasized by the other respondents, was that its obligation was contractual to pay a contingent claim without any right of equitable lien, and, further, that plaintiff erroneously joins an action to establish express liability, a remedy at law, with a pending action for infringement of patent.

[1] It is unnecessary to recite the details of the scheme or plan of reorganizing the insolvent old company involving the issuance and sale of preferred and common stock and the existing indebtedness, or the issuance and sale of bonds. The reorganization, a resultant of the receivership, was lawful and valid between the parties and the public generally. The evidence discloses the financial straits of the insolvent new company; that funds were obtainable only by sale of the assets and property of the original company to the reorganized new corporation; that the issue of capital stock in the latter was largely taken over by the stockholders and officers of the old company and the management and control is substantially the same; that bonds were issued to pay indebtednesses; and that the creditors except the plaintiff have been paid. The reorganization of the old company could not affect the creditors. As to them it was simply a means of procuring money to pay their claims, and the assets as to plaintiff's claim were subject thereto. Baker Motor Vehicle Co. v. Hunter, 238 F. 898, 152 C. C. A. 28. The principle by which the rights of unpaid creditors are retained and enforceable against a reorganized company is clearly stated in Northern Pacific Railway Co. v. Boyd, 228 U. S. 482, 33 S. Ct. 554, 57 L. Ed. 931:

"Corporations, insolvent or financially embarrassed, often find it necessary to scale their debts and readjust stock issues with an agreement to conduct the same business with the same property under a reorganization. This may be done in pursuance of a private contract between bondholders and stockholders. And though the corporate property is thereby transferred to a new company, having the same shareholders, the transaction would be binding between the parties. But, of course, such a transfer by stockholders from themselves to themselves cannot defeat the claim of a nonassenting creditor. As against him the sale is void in equity, regardless of the motive with which it was made. For if such contract reorganization was consummated in good faith and in ignorance of the existence of the creditor, yet when he appeared and established his debt the subordinate interest of the old stockholders would still be subject to his claim in the hands of the reorganized company. Cf. San Francisco & N. P. R. R. v. Bee, 48 California, 398; Grenell v. Detroit Gas Co., 112 Michigan, 70. There is no difference in principle if the contract of reorganization, instead of being effectuated by private sale, is consummated by a master's deed under a consent decree."

In the Baker Case, supra, an action at law to recover on a bond, Judge Rogers, writing for the Circuit Court of Appeals, said:

"It is elementary that a corporation cannot give away its assets to the prejudice of its creditors, nor can it, as against its creditors who have not assented to it, transfer all of its assets to another corporation which guarantees the payment of the debts of the former. The express agreement to pay the debts does not constitute a novation, and the corporation, taking the property, holds it subject to a lien in favor of the creditors of the transferrer."

[2, 3] And the learned court clearly points out that where the transferee corporation agreed to assume the debts under

equitable principles or the modern codes of procedure, the creditors of the transferring company have the right to maintain a direct action against the transferee corporation upon the contract. The obligation to pay the plaintiff on liquidation of its claim arising out of the infringement by the old company of the patent in suit was not exclusively a contractual obligation between it and the new corporation, since the later corporation, as a condition of sale to it, assumed the burden of paying plaintiff's claim for recoverable damages upon ascertainment of the amount. The wording of the order of sale and a similar clause in the deed of conveyance is believed sufficiently comprehensive to include such recovery. The assumption to pay not only all obligations and indebtedness of the receivers, but also all unmatured obligations of creditors of the old company, and the specific provisions that the purchaser "assumes claim for damages for alleged infringement by the defendant of letters patent of the United States," is plain and unequivocal. It makes no material difference that the reference to damages for alleged infringement was contained only in the order of sale and omitted from the deed of conveyance. There is also oral testimony that bidders were expressly warned at the sale of plaintiff's unliquidated claim against the old company. Under the circumstances, plaintiff in my opinion is not limited to a remedy at law based on the legal assumption to pay a recovery, but may resort to equitable cognizance and establish a lien against the assets and property acquired under order of the court.

Many adjudications are cited by learned counsel to the effect that any existing liability was simply contractual, and that plaintiff was obliged to recover a judgment at law or in a creditor's bill before resorting to a supplemental bill. This contention, however, and the argument in support thereof, I find unpersuasive. The interlocutory decree in the infringement suit had been entered and the accounting before the special master was under way when the order was made in the receivership action for creditors to prove their claims, and subsequently on application of the plaintiff herein and notice to the receivers it was stipulated that the claim of the latter when ascertained should be protected in the decree of sale. The plaintiff as a creditor practically became and was a party to the action brought to wind up the affairs of the original defendant. Its claim was the only one not paid and was an unmatured business obligation. That it was not liquidated or ascertained within the time specified in the order for proving claims of creditors is not of material importance. No laches resulted from the omission. The sale by the receivers was not delayed and the administration was not hindered. This in a measure, no doubt, was due to the arrangement willingly entered into by the receivers representing the old company who were assisting to effect the reorganization plan. The successor company by the arrangement and assumption of the obligations of its predecessor became primarily liable in equity to pay the unascertained damages.

Philadelphia Rubber Co. v. U. S. Rubber Reclaiming Works (D. C.) 276 F. 600–613, affirmed (C. C. A.) 277 F. 171, certiorari denied 257 U. S. 661, 42 S. Ct. 187, 66 L. Ed. 422, is not distinguishable in principle from this case because of any difference in the assumption of liability. It makes no difference that in this case the assumption is denied. And the case of Scott v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358, presents no analogy to the facts here. In that case a suit in equity was brought on facts disclosing an action at law, and, even though the statutes of Mississippi gave a right in equity, the Supreme Court held that such a right could not be invoked in the federal courts. That decision it seems to me was based on a different principle. Here the equitable jurisdiction of the subject arises, as heretofore pointed out, from the procedure in the receivership action and from an equitable assumption to pay plaintiff's damages. It is true that ordinarily a mere claim for damages gives no lien on the property of the person sued, and before a lien attaches the claim must find its way to judgment. But in this case there exists a distinctive right to follow the trust assets and funds of the old company. The principle finds support in Kansas City S. Ry. Co. v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579; Pierce v. U. S., 255 U. S. 398, 41 S. Ct. 365, 65 L. Ed. 697; Howard v. Maxwell Motor Co. (C. C. A.) 275 F. 53; and a supplemental bill was properly brought, since the purchasing corporation was aware of the accounting and expressly assumed the liability. Philadelphia Rubber Co. v. U. S. Rubber Reclaiming Works, supra. This doctrine is also supported by Window Glass Machine Co. v. New Bethlehem Window Glass Co. (C. C. A.) 264 F. 822; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; Goodyear Shoe Machinery

Co. v. Dancel, 119 F. 692, 56 C. C. A. 300; Silver King Consol. Mining Co. v. Silver King Coalition Mines Co., 204 F. 166, 122 C. C. A. 402, Ann. Cas. 1918B, 571.

[4] It is next contended by respondents that in the phrase "shall assume all unmatured obligations," contained in the order of sale, plaintiff's claim was neither included nor implied, since the word "unmatured" has a legal signification only. Such wording, it is argued, is limited to debts arising from negotiable obligations or contracts or liabilities from business engagements, but I am not in accord with this limited understanding of the term. The word "unmatured" was used in my judgment to describe a debt that was contingent and one in which the amount had yet to be ascertained. It is urged that the new corporation did not assume payment of profits recoverable for infringement, and the word "damages" in the order of sale, unaccompanied by the word "profits," is indicative of a limitation of damages alone and not recoverable profits; that as plaintiff's recovery was for profits, and not damages, no liability for profits is implied. It is fair to assume that the order and deed of conveyance providing for assumption of claim for damages was not prepared by a patent lawyer. Whoever prepared it was perhaps unfamiliar with the technical distinction of the words in patent law, but I think its use was in a broad sense to describe an amount which plaintiff hoped to recover for past infringements. In Wooster v. Trowbridge, 120 F. 667, 57 C. C. A. 129, a case tried in 1903 before this court, a similar question arose, and the late Judge Coxe, who wrote the affirming opinion, said the parties in that case were dealing with facts, not theories, and in using the word "damages" they did not intend to recognize a finespun distinction between damages and profits. And, moreover, in Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860, the Supreme Court substantially said that profits are really damages.

[5] It is said the plaintiff is estopped by neglect and laches and by the statute of limitations. Upon the point of laches it is argued that plaintiff should have availed itself of its remedy directly after the new corporation acquired the property of the old company, instead of waiting eight years before proceeding against the former and the trust mortgagee; that new capital was brought into the business and capital stock sold to many persons in good faith and on the assumption that the title was unincumbered.

There was delay and procrastination, it is true, in the accounting proceeding before the special master appointed to ascertain the damages; but whose fault was it? The questions arising from the asserted infringement of the Creveling patent were difficult and involved the taking of considerable technical testimony. There was delay by the old company in filing the required account, and much testimony was afterwards taken at different times and various issues injected at the behest of the new company. Motions were heard and decided, and finally the taking of testimony was closed in 1921, though the special master did not file his report until May, 1923. The new corporation not only was aware of the pending proceeding, but actively participated therein. The delay it cannot be said was to the disadvantage of the respondents herein. Northern Pacific R. Co. v. Boyd, 228 U. S. 508, 33 S. Ct. 554, 57 L. Ed. 931; Foster v. Mansfield, 146 U. S. 88, 13 S. Ct. 28, 36 L. Ed. 899. Their position was not changed by reason of any nonaction by plaintiff, nor did the delays in hearings induce the Guaranty Trust Company to do anything which it had not already done. Its participation in the reorganization of the old company occurred very soon after the sale of the property to the new corporation. The rule of statutory limitations has been examined by me, but in view of the conclusion I have reached, that plaintiff has in fact an equitable lien on the assets of the old company, it has no bearing.

[6] It is forcibly and ably presented that plaintiff can have no equitable lien, since the evidence shows that it merely was owner of an unliquidated claim for damages for past infringements, and Fogg v. Blair, 133 U. S. 535, 10 S. Ct. 338, 33 L. Ed. 721, in the main is relied on to support the contention. In that case it is true the Supreme Court held that a bare claim—one not in judgment —does not become a lien upon property prior to a mortgage made by a purchasing company to secure an issue of bonds, even though the latter had assumed to pay the claim. In its opinion the Supreme Court said that even though it were shown that the purchaser of the bonds had notice of the plaintiff's claim, it would make no difference, since a mere claim created no lien upon the property nor any restriction upon the company's rights. That case, however, is believed distinguishable on principle from this. Here the record shows participation by the Guaranty Trust Company in the reorganization of the old company. The deed of trust to it was recorded almost simultaneously with the deed to the new corpora-

tion which took title subject to all unmatured obligations arising out of the operation of the old plant and assumed their payment. Such an assumption taken, with the assignment of the Stockholders' Protective Committee bid and the order of sale to which the deed specifically refers, was, I think, comprehensive enough to charge the trust mortgagee with notice of plaintiff's claim, or at least charged it with the duty of making inquiry as to the contents of the order of sale. The omission in the deed of the specific references in the order of sale to damages for alleged infringement of patent did not absolve the trust mortgagee from inquiry and investigation as to the contents of the order of sale. The reference in the deed indicating conditions certainly must be given effect and required a prudent man to make inquiry. If reasonable inquiry had been made, the character of plaintiff's claim, as well as the rule of law in relation thereto, would no doubt have been discovered; but, instead of inquiring for particulars, the matter appears to have been treated as of no consequence. The principle of warning and caution to purchasers, it seems to me, is directly applicable to the present situation (Pomeroy on Eq. Juris. § 497), and the purchaser is bound by constructive as well as by actual notice. Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 S. Ct. 239, 35 L. Ed. 1063; Williamson v. Brown, 15 N. Y. 354; Sweet v. Henry, 175 N. Y. 268, 67 N. E. 574.

[7] The contention that the constructive notice to the trust mortgagee simply amounted to notice that the property was possessed by the new corporation free of the claims of the old company or its creditors or stockholders is not maintainable. Such an inference from the facts and circumstances is thought unwarranted. It is therefore determined herein that the Guaranty Trust Company is a proper party defendant under Equity Rule 26, and that it was charged with constructive notice of plaintiff's rights and equitable lien on the assets and property sold by the receivers to the new company under the decree of sale dated June 2, 1915. The intervener Miniger, who, as the evidence shows, in 1921 became president of the new company, admittedly was aware, at the time he bought the stock or took over the Willys Company loan or made advances to the new company, of plaintiff's claim and the pending accounting proceeding. That Miniger was advised by counsel that no action could be successfully prosecuted against the new corporation because of the long lapse of time, or that the latter would not be bound to pay profits, does not alter the status of plaintiff's equitable lien. He had constructive notice of the contents of the order of sale and the references thereto in the deed to the new company. The interveners are entitled to no such special equities as to require modification of the order of sale or any prior order entered herein. Their claims cannot take precedence over plaintiff's. The insistence that the supplemental bill cannot regularly be filed before entering judgment against the old company or against the new corporation in my opinion is not maintainable, since the theory of the bill, as heretofore pointed out, is to enforce an equitable lien against property in the possession of the reorganized corporation in which the Guaranty Trust Company and interveners claim an interest. The purpose of the bill was not to recover possession of property in the control of the new corporation, and I think bringing in of the respondents by supplemental bill was a proper procedure. Root v. Woolworth, 150 U. S. 401, 14 S. Ct. 136, 37 L. Ed. 1123; Philadelphia Rubber Co. v. United States Rubber Reclaiming Works (D. C.) 276 F. 600.

Other questions argued at the bar have been examined by me, but it is not thought necessary to pass upon them in greater detail, since I am not persuaded to any other or different conclusion than herein expressed.

Plaintiff is entitled to a decree as prayed with costs against the original defendant and its receivers and the respondents brought in by the supplemental bill. But since there was evidence tending to show that the new corporation is able to pay the damages without in all likelihood impairing the security of the bonds covered by the trust deed, the decree must provide that recourse be first had against the assets and property of the United States Light & Heat Corporation, and that only in default of payment should the lien be enforced against the assets and property of the old company. Before entering the decree it should be submitted to counsel for respondents, to the end that bondholders and stockholders may receive such protection as a court of equity may be able to give without, however, ultimately interfering with plaintiff's right to enforce its lien as herein adjudicated. So ordered.